Harold TURMAN, Plaintiff–Appellant,

v.

Larry BUCKALLEW, Sheriff of Pueblo County, Defendant–Appellee.

Harold Dean TURMAN, Petitioner,

v.

Thomas I. COOPER, Superintendent, Four Mile Modular Units, Walter L. Kautzky, Executive Director, Colorado Department of Corrections, and Colorado State Board of Parole, Respondents.

Nos. 88SA235, 88SA477.

Supreme Court of Colorado,
En Banc.

Dec. 18, 1989.

As Modified on Denial of Rehearing
Jan. 16, 1990.

David F. Vela, Colorado State Public Defender, Jaydee K. Bachman, Deputy State Public Defender, Denver, for plaintiff-appellant in no. 88SA235.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert Petrusak, Asst. Atty. Gen., Appellate Section, Denver, for defendant-appellee in no. 88SA235.

Harold D. Turman, Canon City, pro se. in no. 88SA477.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Robert C. Ripple, Asst. Atty. Gen., Human Resources Section, Denver, for respondents in no. 88SA477.

Justice MULLARKEY delivered the Opinion of the Court.

In this case, we have consolidated two appeals brought by Harold Turman regarding two separate district court judgments denying his petitions for writs of habeas corpus. In *Turman v. Buckallew*, he appeals from the Pueblo County District Court's denial of his application for a writ of habeas corpus. The district court in *Buckallew* denied habeas corpus relief, af-

ter an evidentiary hearing. It found that Turman's parole revocation hearing was held within the statutory time limit and that the administrative law judge had not abused his discretion by denying Turman's request for appointed counsel. We affirm the district court's order although we employ a different analysis.

The second case brought by Turman, entitled *Turman v. Cooper*, is a pro se appeal from the District Court of Fremont County's dismissal of Turman's petition for writ of habeas corpus. The district court reviewed the petition on the pleadings and dismissed it. We disagree with the reasoning of the district court but we affirm its order of dismissal.

■ We consider both cases as appeals from the denials of Crim.P. 35(c) motions. We have held previously that a habeas corpus petition which seeks relief available under Crim.P. 35 should be treated as a Crim.P. 35 motion based upon "the substantive constitutional issues raised therein, rather than [upon] the label placed on the pleading." *White v. Denver Dist. Court*, 766 P.2d 632, 634 (Colo.1988) (*quoting Dodge v. People*, 178 Colo. 71, 73, 495 P.2d 213, 214 (1972)). Appropriate grounds for post-conviction relief pursuant to Crim.P. 35 include allegations that the defendant's sentence was imposed in violation of the constitution or laws of the United States or Colorado or that there has been an unlawful revocation of parole. Crim.P. 35(c)(2)(I) & (VII); *White*, 766 P.2d at 635; *see also People v. Turman*, 659 P.2d 1368, 1370 (Colo.1983). Thus, we conclude that the Pueblo and Fremont County District Courts should have treated Turman's habeas corpus petitions as Crim.P. 35(c) motions for post-conviction relief. *See also Blevins v. Tihonovich*, 728 P.2d 732, 733 (Colo. 1986) ("[h]abeas corpus relief is generally not available unless other relief is unavailable"). In the interest of judicial economy, we have elected to retain jurisdiction of Turman's appeals although jurisdiction of an appeal from a Crim.P. 35(c) motion is

properly vested in the court of appeals. § 13–4–102(1), 6A C.R.S. (1987); *White*, 766 P.2d at 634 n. 6; *Blevins*, 728 P.2d at 733–34.

I.

Both of Turman's appeals concern the revocation of his parole in 1986. Turman was on parole from the Colorado Department of Corrections when he violated a condition of his parole by voluntarily leaving the state. On February 18, 1986, Colorado issued a warrant for his arrest and he was arrested in California on April 11, 1988. Turman did not waive extradition until April 28. Subsequently, he was returned to Colorado on May 10 and served with the parole revocation warrant on May 11. While being held in the Pueblo County jail for the alleged parole violation, Turman pled guilty, on May 17, to a charge of fraud by check. He immediately was sentenced to, and began serving, a one year term in the Pueblo County Jail. At Turman's parole revocation hearing on June 2, 1988, he objected to the parole board's jurisdiction and requested an attorney to represent him. Turman's request for an attorney was denied after the administrative law judge conducted an extensive interview with him. Following the hearing, Turman's parole was revoked.

Turman filed a pro se petition for habeas corpus relief in Pueblo County District Court on May 25, 1988. Counsel from the Public Defender's office was appointed to represent him and an amended petition for writ of habeas corpus was filed on June 20, 1988. Turman alleged that the following reasons justified his immediate release: (1) the parole board lacked jurisdiction because his parole revocation hearing was not held within the statutorily-mandated thirty day time limit; (2) he was unlawfully denied counsel at his parole revocation hearing; (3) the parole board failed to follow the statutory procedures to be used in notifying a defendant of the board's decision;[1]

---

**1.** This issue was withdrawn by Turman's counsel during the district court's hearing on the    petition for writ of habeas corpus.

and (4) he had been held without bond since April 28, 1988.

On July 1, 1988 the district court held a hearing on Turman's petition for writ of habeas corpus. The court ruled that Turman's parole had been lawfully revoked and that the thirty day requirement of section 17–2–103(7), 8A C.R.S. (1988 Cum. Supp.) began to run on May 11, 1988 which was the day that he was served with the parole violation warrant. The court also ruled that there was no showing that the administrative law judge abused his discretion in denying appointed counsel. Turman then appealed to this court from the trial court's ruling discharging his writ of habeas corpus and refusing to reinstate parole.

Following the Pueblo District Court's denial of habeas corpus relief, Turman was transferred to Fremont County to begin serving his sentence at a state correctional facility. Turman then filed a second petition for writ of habeas corpus in Fremont County District Court on September 20, 1988. When the trial court did not act on his petition, Turman petitioned this court for a writ of mandamus ordering the court below to hold a hearing pursuant to his petition. On December 1, 1988, we denied the petition for writ of mandamus without prejudice to the right to reapply if the district court failed to rule on the motion for habeas corpus within fifteen days. On December 12, the district court issued an order of dismissal without a hearing. It held that Turman was lawfully confined, that he had failed to state a cause of action upon which relief can be granted, and that, since Turman's complaints primarily concerned improper actions of the parole board, the Administrative Procedure Act rather than a writ of habeas corpus was the proper vehicle for relief. Turman petitioned this court for habeas corpus relief under C.A.R. 21, and we entered an order stating that we would consider his motion as an appeal from the denial of a Crim.P. 35(c) motion.

We first will address the issues raised on appeal in the Pueblo habeas corpus action, *Turman v. Buckallew:* (1) whether Turman's parole revocation hearing was held within the thirty day time limit mandated by section 17–2–103(7), and (2) whether Turman was entitled to assistance of counsel at his parole revocation hearing. In Part IV of this opinion, we will discuss the Fremont habeas corpus action, *Turman v. Cooper.*

II.

Turman argues that his arrest in California on April 11, 1988 triggered the start of the thirty day requirement of section 17–2–103(7) for the commencement of his parole revocation hearing. Consequently, according to his argument, the hearing was held too late and the parole board did not have jurisdiction to act on June 2 when it revoked his parole. For the reasons discussed below, we reject this argument and hold that Turman was "arrested" within the meaning of the statute when he was returned to the custody of Colorado authorities. Under the facts of this case, the thirty days began to run on May 10, 1988, when he was delivered to the Pueblo County Jail.[2] Thus, the hearing held on June 2 was within the thirty day requirement.

We have characterized parole as a "privilege," and have stated that no prisoner is entitled to parole as a matter of right. *See In re Question Concerning State Judicial Review of Parole Denial,* 199 Colo. 463, 465, 610 P.2d 1340, 1341 (1980). The decision of the parole board to grant or deny parole is discretionary and is not subject to judicial review. However, we do have power to review the parole board's actions when it has failed to exercise its statutorily imposed duties. *Id.*

An alleged parole violator "is not entitled to a speedy public trial pursuant to the Sixth Amendment, but is entitled to a fair hearing for purpose of ascertaining whether or not he has violated his parole." *Hutchison v. Patterson,* 267 F.Supp. 433, 434 (D.Colo.1967). *See also Martinez v.*

---

**2.** Here, a private extradition service picked up Turman on May 6 and returned him to Colorado on May 10. Even if Colorado authorities had taken custody of Turman in California, the thirty day period would have been satisfied by the June 2 hearing.

*Patterson,* 429 F.2d 844 (10th Cir.1970), *cert. denied* 402 U.S. 934, 91 S.Ct. 1528, 28 L.Ed.2d 868 (1971) (specific constitutional safeguards of counsel, witnesses, evidence, confrontation, cross-examination and compulsory process are not required at state parole revocation hearings). Furthermore, when the revocation hearing is not held within the statutory time period, the proper sanction for violation of the statute is a temporary release from custody. The parole violation complaint is not dismissed and the parole board does not lose jurisdiction to revoke parole. *Cf. People v. Clark,* 654 P.2d 847, 848 (Colo.1982) (applying same reasoning to probation revocation).

The statute governing parole revocation hearings in Colorado, § 17–2–103(7), 8A C.R.S. (1989 Cum.Supp.), clearly is limited to the situation where a parolee is in the physical custody of Colorado authorities. Subsection 17–2–103(7) states:

If the parolee is in custody pursuant to subsection (4) of this section, or the parolee was arrested and then released pursuant to paragraph (c) of subsection (5) of this section, the hearing on revocation shall be held within a reasonable time, not to exceed thirty days after the parolee was arrested; except that the board or the administrative law judge may grant a delay when the board or the administrative law judge finds good cause to exist therefor. If the parolee was issued a summons, the final hearing shall be held within thirty working days from the date the summons was issued; except that the board or the administrative law judge may grant a delay when the board or the administrative law judge finds good cause to exist therefor. The board shall notify the sheriff, the parole officer, and the parolee of the date, time, and place of such hearing. It shall be the responsibility of the sheriff to assure the presence of the parolee being held in custody at the time and place of the hearing and to provide for the safety of all present.

Subsection 17–2–103(4), 8A C.R.S. (1986), in turn provides as follows:

(a) If, rather than issuing a summons, a parole officer makes an arrest of a parolee, with or without a warrant, or the parolee is otherwise arrested, the parolee shall be held in a county jail pending action by the parole officer pursuant to subsection (5) of this section.

Subsection 17–2–103(5), 8A C.R.S. (1986), adds:

Not later than ten working days after the arrest of any parolee, as provided in subsection (4) of this section, the parole officer shall complete his investigation and either:

(a) File a complaint before the board in which the facts are alleged upon which a revocation of parole is sought; or

(b) Order the release of the parolee and request that any warrant be quashed and that any complaint be dismissed, and parole shall be restored; or

(c) Order the release of the parolee and issue a summons requiring the parolee to appear before the board at a specified time and place to answer charges of violation of one or more conditions of parole.

The language of these provisions, in each case, prescribes actions which may only take place if the parolee is in the custody of Colorado authorities. For example, a parolee arrested for violating a term of his parole is to be held in a county jail; within ten days of his arrest, a parole officer must file a complaint with the parole board or order the parolee's release. It is inconceivable that a Colorado parole officer would be able to order a court in a foreign jurisdiction to hold·or release the parolee as he saw fit.

■ As we read subsection 17–2–103(7), once a parolee who has been arrested in a foreign jurisdiction based on a Colorado arrest warrant for parole violation is delivered into the custody of Colorado authorities, he has been "arrested" within the meaning of the thirty-day hearing requirement of that statute and is entitled to the procedural protections outlined in the statute. Until that time,. a parolee held in custody in *another* state on a Colorado parole violation warrant has no rights under section 17–2–103(7). A parolee in such

circumstances must resort to some other remedy, such as a petition for writ of habeas corpus, to redress any alleged due process violations or other violations of his rights stemming from the out-of-state detention. *See generally Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

We hold that the thirty day time limit began to run when Turman was taken into custody by Colorado authorities as a result of the parole violation warrant. Therefore, Turman was "arrested" within the meaning of the statute on May 10, 1988, and the parole board had jurisdiction to act on June 2 when it revoked his parole.

### III.

The second issue in the *Buckallew* case is whether Turman was entitled to the assistance of counsel at his parole revocation hearing. There is no constitutional right to counsel at parole revocation hearings. *Wilkerson v. Patterson*, 303 F.Supp. 665 (D.Colo.1969); *Martinez*, 429 F.2d 844. However, the circumstances under which the board should appoint counsel for a parolee in a revocation hearing are governed by section 17–2–201(13)(a), 8A C.R.S. (1988 Cum.Supp.), which states:

(13)(a) The board may appoint or contract with an attorney to represent a parolee at a parole revocation hearing only if:

(I) The parolee denies that he violated the condition or conditions of his parole, as set forth in the complaint;

(II) The parolee is incapable of speaking effectively for himself;

(III) The parolee establishes to the satisfaction of the board that he is indigent; and

(IV) The board, after reviewing the complaint, makes specific findings in writing that the issues to be resolved are complex and that the parolee requires the assistance of counsel.

The Supreme Court in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), held that "[a]lthough the presence and participation of counsel will probably be both undesirable and con-stitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees." *Gagnon*, 411 U.S. at 790, 93 S.Ct. at 1763. The court further set out guidelines to be followed in determining when an attorney should be provided, and these guidelines are similar to the requirements codified in section 17–2–201(13)(a).

The facts in this case reveal that the administrative law judge did not abuse his discretion in refusing to appoint counsel. Apparently Turman requested an attorney upon receipt of the parole revocation warrant in Colorado. He was told by the parole agent at this time that he could be represented by an attorney and that, if he wished, he could contact the Public Defender's office. The trial court noted that there was no evidence substantiating whether or not he ever contacted the Public Defender's office. At the parole hearing, Turman again requested an attorney. The administrative law judge held an extensive interview with Turman and based on the statutory requirements of section 17–2–201(13)(a), decided not to appoint an attorney.

The administrative law judge found that although Turman was indigent, he pled guilty to the parole violations, he was capable of speaking for himself, and the issues involved were not so complex that he would be unable to cross-examine witnesses or to represent himself at the hearing. Turman presented eight or nine letters in mitigation concerning his re-integration into society, and it was not apparent that an attorney could have made any significant difference in the presentation of further mitigating evidence. Turman was familiar with the legal process and specifically with parole revocation hearings. He was a law librarian at a correctional facility and had assisted in the preparation of pleadings for other inmates approximately 500 times. Moreover, he had the experience of appearing before the parole board in 1966 when he was represented by an attorney and rein-

stated on parole. Finally, the administrative law judge did advise Turman that if he did not understand anything during the proceedings, he had the right to interrupt and ask questions.

Thus, we conclude that the parole board had jurisdiction on the date it revoked Turman's parole and that the administrative law judge did not abuse his discretion in refusing to appoint counsel. The order of the Pueblo County District Court is affirmed on both issues.

## IV.

■ After the Pueblo County District Court's denial of Turman's petition for writ of habeas corpus on July 1, 1988, he appealed to this court. While that appeal was pending, Turman filed another petition for writ of habeas corpus in Fremont County District Court on September 20, 1988.[3] Turman's second petition contained the identical issues alleged in his first petition as well as additional allegations. All of the added allegations concerned facts which had taken place or were within his knowledge prior to the first habeas corpus hearing. The additional issues, which were not alleged in Turman's first petition for writ of habeas corpus, are as follows: (1) that Turman was not afforded a probable cause hearing; (2) that his appeal to the parole board was denied on its face without investigation of the allegation; (3) that the time spent in actual custody since his arrest has not been credited to his sentence; and (4) that the parole board has miscalculated his discharge date.

We affirm the Fremont County District Court's dismissal of Turman's second habeas corpus petition but we do so on different grounds. The petition was properly dismissed because all of the asserted grounds for relief were or could have been raised in the first case, *Buckallew.*

3. There are some discrepancies between Turman's petition for writ of habeas corpus to the Fremont County District Court, his motion for habeas corpus pursuant to C.A.R. 21 filed in this court, and his opening brief. We will address only the issues alleged in the petition for writ of habeas corpus filed in Fremont County District

Case law and Crim.P. 35(c) make it clear that a court should not entertain repetitive motions for post-conviction relief. Crim.P. 35(c)(3) provides in part that "[t]he court need not entertain a second motion or successive motions for similar relief based upon the same or similar allegations on behalf of the same prisoner." We have emphasized that "[w]here a post-conviction application is filed, it should contain all factual and legal contentions of which the applicant knew at the time of filing, and failure to do so will, unless special circumstances exist, ordinarily result in a second application containing such grounds being summarily denied." *People v. Scheer*, 184 Colo. 15, 20, 518 P.2d 833, 835 (1974); *see also People v. Hubbard*, 184 Colo. 243, 519 P.2d 945 (1974).

In the case at hand, no special circumstances justify a second petition. The primary issues were asserted and decided in Turman's first petition for writ of habeas corpus. Although he did assert several other allegations in the second petition, all were claims of which both Turman and his counsel would have been fully aware when the first petition was heard. We must assume that Turman's appointed counsel properly handled his case and that counsel presented the contentions which he found to have merit. Indeed, as noted above, counsel exercised his discretion to frame the case by withdrawing one of Turman's arguments at the hearing. Special circumstances are not present simply because Turman raised additional issues in his second *pro se* petition. The trial court in the first case heard the evidence and legal argument at a hearing in which both Turman and his counsel participated. Thus, Turman was given an adequate opportunity to present all of his claims in one proceeding. There is no reason for us to encourage the unnecessary judicial confusion which could result if the Fremont County District Court were allowed to grant Crim.P. 35(c) relief

Court. *See Abts v. Board of Educ.,* 622 P.2d 518 (Colo.1980); C.A.R. 1(c); *Lambert v. Haskins,* 128 Colo. 433, 263 P.2d 433 (1953) (arguments of issues in an appellant's brief not presented to the trial court will not be considered by the supreme court).

while Turman's first case was on appeal. *See People ex rel. Wyse v. District Court,* 180 Colo. 88, 503 P.2d 154 (1972). We conclude that Turman's second motion for post-conviction relief was properly dismissed.

We affirm the order of the Fremont County District Court's denial of habeas corpus relief and the dismissal of Turman's petition.