**COLORADO DEPARTMENT OF CORRECTIONS, PAROLE DIVISION, by and through the Executive Director, Jeannie MILLER, and Sheriff of the City and County of Denver, Fred Olivia, State of Colorado, Respondents–Appellants,**

v.

**William MADISON, Petitioner–Appellee.**

No. 03SA14.

Supreme Court of Colorado,
En Banc.

March 1, 2004.

Ken Salazar, Attorney General, Joseph P. Sanchez, Assistant Attorney General, Denver, Colorado, Attorneys for Respondents–Appellants.

Gary D. Fielder, Westminster, Colorado, Attorney for Petitioner–Appellee.

Jane Hazen, Denver, Colorado, Attorney for Amicus Curiae Colorado Criminal Defense Bar.

Justice MARTINEZ delivered the Opinion of the Court.

In this case, we consider an appeal brought by the Colorado Department of Corrections challenging the Denver District Court's interpretation of section 17–2–103(7), 6 C.R.S. (2003). The district court interpreted section 17–2–103(7) to require that a parolee may be held in custody pending a revocation hearing for only thirty days after his arrest, even though the revocation hearing may be continued beyond thirty days and held after a parolee's temporary release. In rendering its ruling, the court relied on dicta contained within two cases, *Turman v. Buckallew,* 784 P.2d 774 (Colo.1989), and *Goetz v. Gunter,* 830 P.2d 1154 (Colo.App.1992). Upon a review of the court's reliance on the dicta of *Turman* and *Goetz,* and following an evaluation of the plain meaning of section 17–2–103(7), we disagree with the district court's interpretation of the statute. Accordingly, we hold that, in the context of section 17–2–103(7), upon a finding of good cause by the parole board, a parole revocation hearing can be delayed beyond thirty days after the parolee's arrest and a parolee can be held in custody for a reasonable time pending the revocation hearing. Thus, we reverse.

I.

FACTS AND PROCEEDINGS BELOW

On November 30, 2002, William Madison was placed on parole by the Colorado Department of Corrections (DOC). That same day, Madison was charged with violating a variety of Denver municipal ordinances and was detained in the Denver County Jail. As a result of this arrest, a parole hold was placed on Madison.

On December 2, 2002, Madison's parole officer filed a complaint with the parole board alleging that Madison had violated his parole by committing new criminal offenses. A parole revocation hearing was set for December 19, 2002. At the hearing, Madison's parole officer requested a continuance pursuant to section 17–2–103(12). Section 17–2–103(12) states that a parole officer shall request that a parole revocation proceeding be continued until a disposition is reached in the underlying criminal case(s).[1] Over Madison's objection, the hearing officer granted the parole officer's request and continued the hearing to February 20, 2003.

On December 31, 2002, Madison filed a petition for writ of habeas corpus alleging that his incarceration was illegal. Madison asserted that his parole revocation hearing was not held within the thirty-day time period mandated by section 17–2–103(7). Subsection (7) states that if a parolee is in custody,

the hearing on revocation shall be held within a reasonable time, not to exceed thirty days after the parolee was arrested;

---

1. Section 17–2–103(12) reads:

If the parole officer is informed by any law enforcement agency that a parolee has been arrested for a criminal offense and is being detained in the county jail, the parole officer shall file a complaint alleging the criminal offense as a violation of parole. The parole officer shall advise the board of any pending criminal proceeding and shall request that a parole revocation proceeding be deferred pending a disposition of the criminal charge.

except that the board may grant a delay when it finds good cause to exist therefor.

Madison argued that his continued incarceration was illegal because his revocation hearing had not been held within thirty days of his arrest. The district court initially disagreed and dismissed Madison's petition after finding that pending criminal charges constituted good cause to extend the hearing beyond thirty days.

Subsequently, Madison filed a motion for reconsideration and requested a hearing to determine whether he was subject to an illegal incarceration. The court granted Madison's motion and held a short hearing. Upon reconsideration, the court, relying on *Turman* and *Goetz*, ordered Madison released. The court agreed with Madison's argument that a parolee may be held in custody pending a revocation hearing for only thirty days, even though the revocation hearing may be continued beyond thirty days and held after the parolee's release.

■ Although the municipal court charges against Madison were subsequently dismissed and the parole revocation complaint withdrawn,[2] the DOC appealed, challenging the district court's interpretation of section 17–2–103(7).

## II.

## ANALYSIS

We first discuss the DOC's interpretation of section 17–2–103(7) and the discretion the parole board has in deciding whether to continue a parolee's revocation hearing. Next we address the district court's ruling in this matter. Specifically, we discuss the district court's reliance on the dicta of two cases, *Turman* and *Goetz*. By focusing on the dicta of *Turman* and *Goetz*, the court ignored the plain language of section 17–2–103(7). We conclude that the plain meaning of section 17–2–103(7) provides that, upon a finding of

good cause by the parole board, a parole revocation hearing can be delayed beyond thirty days after the parolee's arrest and a parolee can be held in custody for a reasonable time pending the revocation hearing.

## A.

## PAROLE BOARD DISCRETION IN DELAYING REVOCATION HEARINGS

In its appeal to this court, the DOC seemingly interprets section 17–2–103(7) to denote that anytime a parolee is charged with a crime, there exists automatic good cause to delay the revocation hearing and hold the parolee pending resolution of the underlying criminal case. The DOC argues that the district court erred by releasing Madison because the parole board was required to continue Madison's revocation hearing and detain him until a resolution was reached in his underlying municipal court case. We do not agree. Various sections of the parole revocation statute afford the parole board discretion to determine whether good cause exists to continue a revocation hearing.

Section 17–2–103.5 details the only instances in which the parole board is required to delay a revocation hearing. In section 17–2–103.5, the General Assembly lists specific offenses for which a parole officer must file a parole revocation complaint and the parole board must delay the revocation hearing as long as criminal charges are pending and no technical violations have been alleged. These specific offenses include possession of a deadly weapon, or being charged with: a felony, a crime of violence as defined in section 16–1–104(8.5), a misdemeanor assault involving a deadly weapon or resulting in bodily injury to the victim, or sexual assault in the third degree as defined in section 18–3–404. § 17–2–103.5(1)(a)(I)–(II). The parole board must delay a revocation hearing pending a disposition in the underlying criminal

---

**2.** Because the municipal court charges against Madison were dismissed and the revocation complaint withdrawn, this case is moot. Generally, we decline to decide a matter that is moot. However, there are two exceptions to the mootness doctrine: (1) the matter involves a question of great public importance, or (2) the controversy

is capable of repetition, yet evades review. *See Simpson v. Bijou Irrigation Co.*, 69 P.3d 50, 71 (Colo.2003). We are persuaded that the relatively short statutory time periods that exist in these proceedings make the issue we are addressing capable of repetition, yet likely to evade review.

case only when a parolee has been arrested for committing one or more of these limited offenses and no technical violations have been alleged. *See* § 17–2–103.5(1)(c). However, if technical violations have indeed been alleged, the parole board need not continue the revocation hearing. Thus, the statute recognizes that there are circumstances in which the board should proceed with a hearing even when one of the serious charges listed in section 17–2–103.5 is pending. Only under limited conditions does the parole board lack any discretion and must continue a revocation hearing.

In addition to section 17–2–103.5, subsections within section 17–2–103 also suggest that the parole board has discretion when determining whether good cause exists to delay a revocation hearing. Section 17–2–103(9)(a) indicates that when the violation of parole consists of a pending criminal charge, the parole board may hold the revocation hearing before the case has been resolved in criminal court. As section 17–2–103(9)(a) states, "testimony given before the board in a parole revocation proceeding shall not be admissible in such criminal proceeding before a court." Hence, section 17–2–103(9)(a) implies that the parole board may proceed with a hearing even when criminal charges are pending.

Section 17–2–103(12) offers the parole board additional discretion in determining whether to continue a revocation hearing. Subsection (12) states that when a parolee has been arrested by a law enforcement officer and is being detained in a county jail, a parole officer shall advise the parole board of the pending criminal action and shall request that the revocation hearing be deferred pending the disposition of the criminal charge. Only the parole officer has specific duties under section 17–2–103(12); the parole board maintains discretion in determining whether to continue the hearing or not. Because under section 17–2–103(12) the parole board is not required to delay the revocation hearing, the parole board may decide whether it is appropriate to continue a parolee's revocation hearing.

Because Madison had not been arrested for committing one of the specific offenses listed in section 17–2–103.5(1)(a)(I)–(II), the parole board had discretion to decide whether good cause existed to continue Madison's revocation hearing and detain him beyond thirty days after his arrest. Thus, the DOC's broad interpretation of section 17–2–103(7)—that anytime a parolee is charged with a crime, there exists automatic good cause to delay the revocation hearing and hold the parolee pending resolution of the underlying criminal case—is not convincing.

Having explained our disagreement with the DOC's interpretation of section 17–2–103(7), we next discuss the district court's treatment of the statute in rendering its ruling on Madison's petition for writ of habeas corpus.

## B.

### DISTRICT COURT RULING

The plain language of section 17–2–103(7) dictates the procedures that must be followed when a parolee is in custody and is awaiting a revocation hearing. However, in rendering its decision in this case, the district court failed to evaluate the controlling language of section 17–2–103(7) and instead relied upon dicta in *Turman* and *Goetz*. As we will first discuss, mere reliance upon the dicta of *Turman* and *Goetz* can create confusion for courts attempting to discern the meaning of section 17–2–103(7) because the dicta of both cases only address circumstances under which a parolee may be entitled to release from custody under the statute. Instead, as we will later relate, the plain language of section 17–2–103(7) refers not only to the instances in which a parolee might be entitled to release from custody, but also details circumstances in which a revocation hearing can be continued and a parolee can be detained pending that hearing.

### 1. DICTA OF *TURMAN* AND *GOETZ*

Both Madison and the district court mistakenly construe dicta contained within two cases, *Turman* and *Goetz,* to reach the conclusion that a parolee can never be held for longer than thirty days after his or her arrest. The court relied upon specific language

in *Goetz* in which the court of appeals discusses the limitations section 17–2–103(7) puts on the amount of time a parolee can be held pending a revocation hearing when no good cause exists to detain the parolee beyond thirty days after his arrest. In *Goetz*, the court of appeals states:

> If the parolee is arrested, a revocation hearing must be held "within a reasonable time, not to exceed thirty days after the parolee was arrested," unless the board grants a delay for good cause. However, this section limits only the period of time a suspected parole violator may be imprisoned while authorities investigate the alleged violation; it does not limit the time within which the board must act on the issue of revocation.[3]

*Goetz*, 830 P.2d at 1155. The court interpreted this language to mean that Madison was automatically entitled to be released from custody because he had been held beyond thirty days after his arrest. By narrowly focusing on this isolated portion of the *Goetz* opinion, the court mistakenly interpreted section 17–2–103(7) as simply limiting the time a parolee can be held in custody.

This focus on particular language may have caused the district court to lose sight of the fact that the relevant holding of *Goetz* has no bearing upon the issue being decided in Madison's case. In *Goetz*, the court of appeals determined that the statutory time period in section 17–2–103(7) did not apply to a parolee because his parole term had expired, and therefore that the parole board lacked jurisdiction. *Id.* at 1156–57. Thus, *Goetz* offers no guidance as to how the present case should be resolved.

Madison and the district court also mistakenly rely upon isolated dicta in *Turman*. Madison argues that *Turman* stands for the proposition that although a revocation hearing may be delayed beyond thirty days after a parolee's arrest, a parolee is entitled to temporary release from custody. In *Turman*, we stated that the remedy for a violation of section 17–2–103(7) is a parolee's temporary release from custody:

> When the revocation hearing is not held within the statutory time period, the proper sanction for violation of the statute is a temporary release from custody. The parole violation complaint is not dismissed and the parole board does not lose jurisdiction to revoke parole.

*Id.* at 778. Madison contends, and the court agreed, that this specific language indicates that thirty days is the maximum period of time he could remain in custody when his revocation hearing was delayed. Such a reading of the *Turman* dicta misapprehends not only the circumstances under which a parolee is entitled to be released from custody, but also ignores the plain meaning of section 17–2–103(7) as a whole.

We stated in *Turman* that temporary release is the sanction for a hearing that is not held within the statutory time period. However, in the context of the issue before us, that statement was dicta intended to emphasize that if Turman had been entitled to relief, the relief would not have been dismissal of the petition to revoke his parole. Rather, the possible relief was merely release from custody on his parole hold until his final revocation hearing. Turman, a Colorado parolee, was arrested in a foreign jurisdiction, extradited to Colorado nearly a month after his arrest, and given a parole revocation hearing twenty-three days after his return to Colorado. *Turman*, 784 P.2d at 776. Turman filed a petition for habeas corpus relief alleging that he was entitled to release due to the fact that "the parole board lacked jurisdiction because his parole revocation hearing was not held within the statutorily-mandated thirty day time limit." *Id.* We rejected Turman's claim and held that "the thirty day time limit began to run when Turman was

---

3. In *Goetz*, the court of appeals states that section 17–2–103(7) "does not limit the time within which the board must act on the issue of revocation." *Goetz*, 830 P.2d at 1155. This assertion is misleading. According to section 17–2–103(7), the parole board must hold the revocation hearing "within a reasonable time, not to exceed thirty days after the parolee was arrested; except that the board may grant a delay when it finds good cause to exist therefore." Thus, the parole board does not have an unlimited amount of time in which to hold a revocation hearing. However, section 17–2–103(7) does not explicitly address the consequence for the board's failure to hold a timely hearing.

taken into custody by Colorado authorities" and that the parole board had jurisdiction when it revoked Turman's parole. *Id.* at 779. Thus, we did not find that the statutory time period was violated. However, we commented that had the statutory time period been violated, Turman's remedy was release from custody pending the parole revocation hearing.

As with *Goetz*, the district court focused on language in *Turman* that merely describes circumstances in which a parolee could be eligible for release under section 17–2–103(7). Unfortunately, the dicta of these two cases can be misread to imply that section 17–2–103(7) only governs issues of temporary release. This reading ignores the plain language of the statute. Section 17–2–103(7) not only governs the instances in which a parolee might be entitled to release from custody, but it also details the circumstances in which a revocation hearing can be continued and a parolee can be detained pending that hearing.

## 2. PLAIN LANGUAGE OF SECTION 17–2–103(7)

█ In construing a statute, we attempt to give effect to the legislative purpose behind the statute. We do so by examining the plain language of the statute and giving the words their plain and ordinary meaning. If the plain language of a statute is unambiguous and clear, we need not employ other tools of statutory interpretation. *Anderson v. Watson*, 953 P.2d 1284, 1290 (Colo.1998).

Section 17–2–103(7) governs parolees who have been arrested, taken into custody,[4] and are awaiting a parole revocation hearing. The plain language of section 17–2–103(7) unambiguously sets forth the steps a parole board must take when a parolee is in custody awaiting a revocation hearing. Section 17–2–103(7) specifically addresses two facets of the revocation process: the circumstances in which a revocation hearing can be continued and a parolee can be detained pending that

hearing; and the instances in which a parolee may be entitled to temporary release from custody. The relevant portion of section 17–2–103(7) states:

> If a parolee is in custody pursuant to subsection (4) of this section, or the parolee was arrested and then released pursuant to paragraph (c) of subsection (5) of this section, the hearing on revocation shall be held within a reasonable time, not to exceed thirty days after the parolee was arrested; except that the board may grant a delay when it finds good cause to exist therefor.

█ As the plain language of subsection (7) indicates, if a parolee is in custody, a revocation hearing shall be held within a reasonable time, not to exceed thirty days after he was arrested, unless the parole board finds good cause to delay the hearing. If the parole board is able to find good cause, a parolee's revocation hearing can be delayed beyond thirty days after the parolee's arrest, and the parolee can be held for a reasonable time pending the revocation hearing. Hence, thirty days after a parolee's arrest, a parolee is entitled to temporary release from custody only if the parole board is unable to find good cause to continue a revocation hearing and detain the parolee.

Section 17–2–103(7) does not simply address the circumstances of a parolee's possible release pending a revocation hearing. Rather, the statute also refers to the instances in which a revocation hearing can be continued and a parolee can be detained pending that hearing.

## 3. APPLICATION OF PLAIN LANGUAGE TO THE PRESENT CASE

As the plain language of section 17–2–103(7) indicates, Madison would only be entitled to temporary release from custody if there were no good cause to continue his

---

4. For purposes of subsection (7), a parolee is in "custody" if:

rather than issuing a summons, a parole officer makes an arrest of a parolee, with or without a warrant, or the parolee is otherwise

arrested, the parolee shall be held in a county jail or a preparole facility or program pending action by the parole officer pursuant to subsection (5) of this section.

§ 17–2–103(4).

revocation hearing beyond thirty days after his arrest and detain him pending that hearing.[5] By misconstruing isolated language contained within *Turman* and *Goetz*, the district court overlooked the essential provisions of section 17–2–103(7) detailing the parole board's ability to find good cause, continue the revocation hearing beyond thirty days after the parolee's arrest, and detain the parolee pending that hearing. Thus, we conclude that the court erred by not recognizing that the plain language of section 17–2–103(7) governs both the instances in which a parolee might be entitled to release from custody, and the circumstances in which a revocation hearing can be continued and a parolee can be detained pending that hearing.

### III.

### CONCLUSION

We conclude that the district court misinterpreted the plain language of section 17–2–103(7) by relying upon dicta located within *Turman* and *Goetz*. We hold that, in the context of section 17–2–103(7), upon a finding of good cause by the parole board, a parole revocation hearing can be delayed beyond thirty days after the parolee's arrest and a parolee can be held in custody for a reasonable time pending the revocation hearing. Thus, we reverse.

---

5. The parole board did not make a finding of good cause to continue the hearing. Thus, it is unclear whether the parole board exercised its discretion to determine whether to delay the hearing, or instead believed a continuance was mandated. Both because the district court did not consider this issue, and because this dispute is moot and we have interpreted the legal issue presented as an exception to the mootness doctrine, we do not further address good cause in this case.