2014 CO 14

**Jeffrey T. NOWAK, Petitioner–Appellee**

v.

**Attorney General John W. SUTHERS; Warden Pamela Plough, Colorado Territorial Correctional Facility; and Rick Raemisch, Executive Director of the Colorado Department of Corrections, Respondents–Appellants.**

**Supreme Court Case No. 11SA309**

Supreme Court of Colorado.

February 24, 2014

Jeffrey T. Nowak, pro se, Lake Zurich, Illinois.

Attorneys for Respondents–Appellants: John W. Suthers, Attorney General, Nicole S. Gellar, Assistant Attorney General, Denver, Colorado.

JUSTICE HOOD delivered the Opinion of the Court.

¶ 1 In this habeas corpus appeal, we consider whether section 17–22.5–101, C.R.S. (2013), requires the Colorado Department of Corrections ("DOC") to construe an inmate's sentences as one continuous sentence in determining his parole eligibility date ("PED"), when the second sentence is not imposed until after the PED for the first sentence has passed, and when doing so would result in the inmate becoming parole eligible before serving at least 50% of the second sentence. To resolve this question, we evaluate for the first time the relationship between section 17–22.5–101 and section 17–22.5–403(1), C.R.S. (2013), of article 22.5, which governs "Inmate and Parole Time Computation."

¶ 2 The district court held that basic rules of statutory construction—together with cases interpreting section 17–22.5–101—require DOC to construe all sentences as one continuous sentence when an inmate has been committed under several convictions with separate sentences, even when the inmate's PED for an antecedent sentence has passed before the imposition of a subsequent sentence.

¶ 3 On appeal, DOC argues that applying the one-continuous-sentence rule in calculating Nowak's PED violates section 17–22.5–403(1), which provides that an inmate in certain designated categories "shall be eligible for parole after such person has served fifty percent of the sentence imposed upon such person," less applicable credits. DOC contends that "because Nowak had already reached his PED on his first sentence before receiving his subsequent consecutive sentence, his current PED should be calculated independently of the prior, original sentence to ensure that he serves at least 50% of the sentence imposed upon him."

¶ 4 We agree with the district court. We hold that, for the purpose of computing an inmate's PED, section 17–22.5–101 requires DOC to construe all sentences as one continuous sentence when the inmate has been committed under several convictions with separate sentences, even when doing so results in the inmate becoming parole eligible before serving at least 50% of the second sentence. Accordingly, we affirm the district court's decision.

## I. Facts and Procedural History

¶ 5 Jeffrey T. Nowak was convicted of two counts of aggravated motor vehicle theft and sentenced to eight years in prison. He began serving that sentence on May 13, 2003, which is the effective date of the sentence for parole eligibility purposes. DOC calculated Nowak's PED at 50% of his eight-year sentence, or July 3, 2006, after applying uncontroverted credits for presentence confinement and earned time.[1] Several months after reaching this PED, Nowak absconded from a halfway house while on temporary leave.

---

1. According to the undisputed testimony of the DOC Manager of Time and Release Operations, DOC generally calculates a PED by adding the full length of the sentence to the effective date of the sentence, deducting presentence confinement credits, subtracting 50% of the sentence imposed as an application of good time, and then deducting earned time since the effective date of the sentence.

¶ 6 After being apprehended, Nowak was convicted of felony escape and sentenced to twelve years in prison, to run consecutively to his original eight-year sentence. He began serving the new sentence on July 13, 2007. Because Nowak had already reached his PED on the original sentence when he began serving the new sentence, DOC used July 13, 2007—rather than May 13, 2003—to calculate Nowak's new PED. The result was a PED in May 2012.

¶ 7 Acting pro se, Nowak filed a petition for writ of habeas corpus with the Fremont County District Court, arguing that DOC had erroneously calculated his PED and was unconstitutionally denying him the opportunity to be considered for parole. He contended that DOC should use the May 13, 2003 date to calculate his PED, under which he would be immediately eligible for parole. In response, DOC explained that it "ignore[d]" Nowak's 2003 conviction because the PED for that conviction "was already past" and was therefore irrelevant to its new PED calculation. DOC provided a revised, estimated PED of April 10, 2012, again based solely on Nowak's 2007 conviction.

¶ 8 At the hearing on the petition, DOC explained that it calculated Nowak's PED "as though his 2007 conviction[ ] [were] the only relevant conviction[ ]." DOC argued that it was required to "break out the two sentences and calculate the PED separately for each one" in order to give effect to section 17–22.5–403(1) and ensure that Nowak served both 50% of his 2003 sentence and 50% of his 2007 sentence. DOC acknowledged that if it applied the one-continuous-sentence rule and treated Nowak's eight-year sentence from 2003 and his twelve-year sentence from 2007 as one continuous twenty-year sentence, with an effective date of May 13, 2003, his PED would be approximately one year earlier, in March or April 2011.

¶ 9 The district court rejected DOC's argument that effectuating the 50% requirement of section 17–22.5–403(1) required DOC to ignore the one-continuous-sentence rule of section 17–22.5–101 and ordered it to recalculate Nowak's PED as if he had received a twenty-year composite sentence beginning on May 13, 2003.

¶ 10 DOC appealed under C.A.R. 1(a)(1) and section 13–4–102(1)(e), C.R.S. (2013), arguing that the district court erred by failing to give deference to its construction of section 17–22.5–403(1) in calculating Nowak's PED.

## II. Jurisdiction

¶ 11 We first discuss the basis for this court's jurisdiction. "The writ of habeas corpus is designed primarily to determine whether a person is being detained unlawfully and therefore should be immediately released from custody." *Fields v. Suthers*, 984 P.2d 1167, 1169 (Colo.1999). Habeas corpus is available "as a remedy to adjudicate a prisoner's claim that he was being denied consideration for discretionary parole." *Id.* at 1169–70 (citing *Naranjo v. Johnson*, 770 P.2d 784, 787–88 (Colo.1989)). Here, Nowak filed a writ of habeas corpus alleging that DOC incorrectly calculated his projected PED and that he was currently eligible for parole consideration. The district court agreed, and DOC appealed. This court has jurisdiction over appeals from habeas corpus proceedings. *See* Colo. Const. art. VI, § 2 ("Appellate jurisdiction"); *see also* § 13–4–102(1)(e) (court of appeals does not have initial jurisdiction over appeals from final judgments of the district courts for writs of habeas corpus); *Kodama v. Johnson*, 786 P.2d 417, 418 n. 1 (Colo.1990) ("The supreme court has jurisdiction over appeals from habeas corpus proceedings.").

¶ 12 During the pendency of this appeal, however, Nowak reached his PED and was paroled. As a result, the question of mootness arises. Generally, an appellate court will decline to render an opinion on the merits of an appeal when events after the underlying litigation have rendered the issue moot. *Humphrey v. Sw. Dev. Co.*, 734 P.2d 637, 639 (Colo.1987). Although neither party has raised the issue, we will address the mootness problem because it may affect the existence of a justiciable controversy. *See USAA v. Parker*, 200 P.3d 350, 356–57 (Colo. 2009).

¶ 13 An appellate court may resolve an otherwise moot case if the matter is one

that is " 'capable of repetition, yet evading review.' " *Humphrey,* 734 P.2d at 639 (quoting *Goedecke v. Dept. of Insts.,* 198 Colo. 407, 410 n. 5, 603 P.2d 123, 124 n. 5 (Colo.1979)).

¶ 14 In its motion to stay the district court's order pending appeal, which this court denied, DOC recognized that this issue could recur when it advised that the court's decision "may have [a] broad impact on time computation, and, if the decision in this case is affirmed, it is likely to result in a widespread policy and practice change concerning the calculation of inmate PEDs in situations akin to Nowak's." Thus, this issue is capable of repetition.

¶ 15 This issue may continue to evade review, given the short time frame associated with habeas petitions. *See, e.g., Colo. Dep't of Corrs., Parole Div. v. Madison,* 85 P.3d 542, 544 n. 2 (Colo.2004) (addressing issue raised in DOC appeal from order on writ of habeas corpus releasing parolee from jail, despite mootness concerns, because issue of whether parolee's incarceration was illegal was capable of repetition yet likely to evade review).

¶ 16 Consequently, we exercise jurisdiction here, despite Nowak's transition to parole, because this issue is capable of repetition, yet evading review.

### III.  Standard of Review

¶ 17 The underlying facts regarding Nowak's criminal sentences and time credits are not in dispute. Instead, the parties debate the proper interpretation of sections 17–22.5–101 and 17–22.5–403(1) as they are applied to the calculation of Nowak's revised PED. When the facts are not in dispute and a district court resolves a habeas petition based solely on its interpretation of the relevant statutes and case law, the district court's decision is subject to de novo review. *See Madison,* 85 P.3d at 544.

### IV.  Analysis

¶ 18 This case requires us to analyze the relationship between sections 17–22.5–101 and 17–22.5–403(1) for the first time. Echoing its arguments before the district court, DOC contends that its decision to treat No-

wak's consecutive sentences separately when calculating his PED was reasonable—and therefore entitled to deference—because (1) it gives effect to the statutory language in section 17–22.5–403(1); (2) it resolves a conflict between the two provisions by giving effect to the statute with the later effective date; and (3) it prevents an inequitable windfall for inmates who stagger their crimes over time or commit additional crimes while serving the end of their sentences on parole. We disagree.

¶ 19 We begin our evaluation of DOC's arguments by outlining long-standing rules of statutory construction and applying those rules to the provisions at issue in this case. We then examine extensive Colorado precedent in this area. With this background in mind, we assess whether the provisions can be reconciled and construed harmoniously or whether they conflict such that section 17–22.5–403(1) supersedes section 17–22.5–101. We also consider the reasonableness of DOC's interpretation of the statutory provisions. Finally, we evaluate whether the district court's ruling necessarily results in an inequitable windfall for inmates in a position similar to Nowak's.

### A.  Principles of Statutory Interpretation

¶ 20 Our task is to ascertain and give effect to the General Assembly's intent. *People v. Vigil,* 758 P.2d 670, 672 (Colo.1988); *see also People v. Luther,* 58 P.3d 1013, 1015 (Colo.2002) ("[W]e begin with the proposition that we have a fundamental responsibility to interpret statutes in a way that gives effect to the General Assembly's purpose or intent in enacting a statute."). To do so, we must apply long-standing principles of statutory construction. *See People v. Voth,* 2013 CO 61, ¶ 21, 312 P.3d 144 (Colo.2013). To discern legislative intent, we look first at "the plain and ordinary meaning of the statutory language." *People v. Madden,* 111 P.3d 452, 457 (Colo.2005). "A commonly accepted meaning is preferred over a strained or forced interpretation." *Voth,* ¶ 21. Where we can decipher legislative intent with reasonable certainty because the plain language of a statute is unambiguous and clear, we do

not need to resort to other rules of statutory construction. *Id.*; *Madison*, 85 P.3d at 547.

¶ 21 At the same time, "we must read and consider the statutory scheme as a whole to give consistent, harmonious and sensible effect to all its parts." *Charnes v. Boom*, 766 P.2d 665, 667 (Colo.1988); *accord Bynum v. Kautzky*, 784 P.2d 735, 738 (Colo. 1989) ("If possible, we must try to reconcile statutes governing the same subject."). "We presume that the General Assembly intended the entire statute to be effective and intended a just and reasonable result." *Luther*, 58 P.3d at 1015.

### B. Plain and Ordinary Meaning of Section 17–22.5–101

¶ 22 Title 17 governs Corrections. Article 22.5 addresses "Inmate and Parole Time Computation." Section 17–22.5–101 opens the article and speaks to "applicability":

> **One continuous sentence.** For the purposes of this article, when any inmate has been committed under several convictions with separate sentences, the department shall construe all sentences as one continuous sentence.

Section 17–22.5–403(1) speaks to "parole eligibility":

> (1) Any person sentenced for a class 2, class 3, class 4, class 5, or class 6 felony, or a level 1, level 2, level 3, or level 4 drug felony, or any unclassified felony shall be eligible for parole after such person has served fifty percent of the sentence imposed upon such person, less any time authorized for earned time granted pursuant to section 17–22.5–405.

¶ 23 The plain and ordinary meaning of the first six words of section 17–22.5–101—"[f]or the purposes of this article"—makes clear that the General Assembly intended for this section to apply to *all* of article 22.5, including section 17–22.5–403. Likewise, section 17–22.5–105, C.R.S. (2013) ("Applicability of part"), unequivocally states that section 17–22.5–101 applies to all offenders by virtue of its placement in part 1 of article 22.5: "The provisions in this part 1 shall apply to *all* offenders sentenced to the department." § 17–22.5–105 (emphasis added).

¶ 24 The General Assembly's use of the word "shall" in section 17–22.5–101 is equally unambiguous and compelling: "when any inmate has been committed under several convictions with separate sentences, the department *shall* construe all sentences as one continuous sentence." § 17–22.5–101 (emphasis added). Both this court and the court of appeals have emphasized the mandatory nature of this provision. *See, e.g., Vaughn v. Gunter*, 820 P.2d 659, 662 (Colo.1991) (rejecting DOC's argument because it "ignores section 17–22.5–101 *mandating* the Department to construe all sentences imposed on an inmate as one continuous sentence") (emphasis added); *People v. Santisteven*, 868 P.2d 415, 418 (Colo.App.1993) ("The word 'shall' is mandatory. Thus, the Department of Corrections was required to combine all three of defendant's sentences for purposes of establishing his parole eligibility date.").

### C. Precedent Aggregating Consecutive Sentences

¶ 25 In light of this clear and unambiguous language, this court has held that section 17–22.5–101 requires DOC to aggregate consecutive sentences when computing the PED for an inmate who has received multiple consecutive sentences imposed at different times under a variety of circumstances.

¶ 26 For example, in *Luther*, an inmate served a sentence of incarceration for reckless manslaughter, was released on parole, and then violated parole by committing the crime of escape. 58 P.3d at 1014. We held that the parole revocation reincarceration period and the new sentence for attempted escape were one continuous sentence, to be followed by one period of mandatory parole. *Id.* at 1017. In *Spoto v. Colorado State Department of Corrections*, an inmate attempted to escape while serving a sentence for second degree murder. 883 P.2d 11, 12 (Colo.1994). We held that his three-year escape sentence ran consecutively to his seventeen-year murder sentence, resulting in an aggregate twenty-year sentence in computing his PED. *Id.* at 15–16. In *People v. Broga*, an inmate was convicted and sentenced for additional crimes committed while he was out on parole from an earlier sen-

tence. 750 P.2d 59, 60 (Colo.1988). We held that DOC properly aggregated his consecutive sentences before deducting statutory good time credit. *Id.* at 62. And in *People v. Green,* an inmate's sentences for misdemeanor convictions were expressly made consecutive to previously imposed sentences for felony convictions. 734 P.2d 616, 616 (Colo. 1987). We held that a court could not sentence an adult offender to DOC for a misdemeanor conviction unless the offender already had been sentenced to DOC for a concurrent felony sentence. In so holding, we noted that section 17–22.5–101 requires DOC to construe all sentences "as one continuous sentence" when an offender has been committed under several convictions with separate sentences. *Id.*

¶ 27 The court of appeals also has held that section 17–22.5–101 requires DOC to aggregate consecutive sentences when computing the PED for an inmate who has received multiple consecutive sentences. *See, e.g., Vashone–Caruso v. Suthers,* 29 P.3d 339, 340 (Colo.App.2001) ("When computing the parole eligibility date for an inmate who has received several consecutive sentences imposed at different times, as here, the DOC must first aggregate the sentences."); *Santisteven,* 868 P.2d at 418 (DOC properly combined all of defendant's sentences and treated them as one continuous sentence before calculating the PED); *McKnight v. Riveland,* 728 P.2d 1297, 1299 (Colo.App.1986) (DOC properly calculated the PED for an offender sentenced to life and a consecutive escape sentence by "add[ing] the minimum period of confinement required for parole eligibility on the five to eight-year consecutive term for the escape to the ten calendar years required for eligibility on the life sentence" because "[t]he two sentences are construed as one continuous sentence for purposes of parole eligibility").

¶ 28 The fact that one or more of the sentences was imposed for crimes committed while an inmate was on parole has not altered the court's analysis under section 17–22.5–101. *See Luther,* 58 P.3d at 1017; *Spoto,* 883 P.2d at 15; *Broga,* 750 P.2d at 62–63; *McKnight,* 728 P.2d at 1299.

¶ 29 A critical notion underlying these decisions is that "[w]here consecutive sentences have been imposed, unlike in the case of concurrent sentences, there is no need for one particular sentence to dominate." *Spoto,* 883 P.2d at 14; *accord Badger v. Suthers,* 985 P.2d 1042, 1043 (Colo.1999). Just as all consecutive sentences must be taken into account in calculating the mandatory parole date, *see Badger,* 985 P.2d at 1043, all consecutive sentences must be taken into account in calculating the PED. Under the principle espoused in *Spoto* and *Badger,* there is no need for Nowak's twelve-year sentence to dominate here.

### D. Reconciliation of Sections 17–22.5–101 and 17–22.5–403(1)

¶ 30 DOC interprets section 17–22.5–403(1) to mandate that an inmate who is convicted and sentenced for a crime committed after his original PED may not be eligible for parole until he has served at least 50% of his latest sentence, notwithstanding section 17–22.5–101's requirement that DOC must construe all sentences as one continuous sentence for the purpose of calculating a PED.[2] In urging this construction, DOC asserts that the provisions are irreconcilable. We are unconvinced.

¶ 31 First, DOC perceives a conflict between sections 17–22.5–101 and 17–22.5–403(1) that simply does not exist. As the district court pointed out, "the two statutes can be easily harmonized by construing 'the sentence imposed upon such person,' as used in § 17–22.5–403, as the one continuous sen-

---

**2.** The desire to ensure that Nowak served at least 50% of his later, twelve-year sentence clearly formed the basis for DOC's actual calculation of Nowak's PED, and the district court squarely rejected DOC's interpretation. On appeal, DOC appears to emphasize another aspect of the 50% threshold when it advises this court that Nowak had already reached his PED on the 2003 sentences before the 50% mark of a continuous twenty-year sentence, had one been imposed back in 2003, thus resulting in a violation of section 17–22.5–403(1). DOC's slight shift in focus does not change this court's analysis. The heart of the dilemma continues to be that an inmate had already reached a PED on an earlier sentence before receiving a later consecutive sentence.

tence mandated by § 17–22.5–101 for purposes of Article 22.5, Title 17." [3]

¶ 32 Second, section 17–22.5–403 was not drafted, enacted, or amended in a vacuum. It became effective on June 7, 1990, and was amended on July 1, 1993, and October 1, 2013. Significantly, section 17–22.5–101 had been in effect since July 1, 1984, and was derived from former section 17–20–111, which similarly provided: "For the purposes of this article, when any convict has been committed under several convictions with separate sentences, they shall be construed as one continuous sentence." § 17–20–111, 8 C.R.S. (1978).

¶ 33 As the court of appeals aptly explained in *Santisteven,* the presumption is that the General Assembly was aware of section 17–22.5–101 when it enacted later statutory provisions and could have specified particular circumstances under which multiple sentences should not be combined, had that been its intention:

> § 17–27–106(4)(a)(II) was enacted several years after § 17–22.5–101. We presume that the General Assembly was aware of the statutory provisions with respect to combining sentences for purposes of parole eligibility when enacting the community corrections provisions. Had the General Assembly intended that, for purposes of community corrections placement, multiple sentences not be combined, we assume such language could have been included in the 1987 amendments to § 17–27–106(4)(a). No such language exists. Nor is such an intent evidenced by the language of the statute.

868 P.2d at 418. The General Assembly did not include such limiting language here.

¶ 34 Third, when enacting or amending statutes, the General Assembly is presumed to be cognizant of prior decisional law. *Semendinger v. Brittain,* 770 P.2d 1270, 1272 (Colo.1989). It was therefore presumptively aware of the unanimous line of cases interpreting section 17–22.5–101 as a mandate to DOC to aggregate separate sentences for multiple convictions.

¶ 35 Thus, both the language and timing of sections 17–22.5–101 and 17–22.5–403 make clear that DOC must construe all sentences as one continuous sentence for purposes of calculating an inmate's PED, even under the circumstances presented by Nowak's convictions and sentences.

### E. No Deference to DOC's Interpretation Under These Circumstances

¶ 36 The overarching theme of DOC's argument on appeal is that it made "a reasonable interpretation of the applicable statutory provisions in calculating Nowak's PED" and that the district court "erred by failing to give deference" to that reasonable interpretation. Again, we are not persuaded. As discussed above, DOC's interpretation misconstrues the express language of the General Assembly and unreasonably deviates from prior decisional law. Therefore, deference here is unwarranted.[4]

### F. No Windfall

¶ 37 DOC contends that compliance with section 17–22.5–101 under the circumstances

---

**3.** Because the statutes are not "irreconcilable," as DOC contends, section 17–22.5–403(1) does not supersede section 17–22.5–101 under section 2–4–206 merely because it has the later effective date. *See* § 2–4–206, C.R.S. (2013) ("If statutes enacted at the same or different sessions of the general assembly are irreconcilable, the statute prevails which is latest in its effective date.").

**4.** DOC's application of the statutes in this instance is also unreasonable because it is inherently incongruous. DOC's "Official Time Computation Report" lists the sentence effective date as July 13, 2007, for purposes of calculating Nowak's PED and as May 13, 2003, for purposes of calculating his mandatory release date. In addition, DOC awarded Nowak 107 days of pre-

sentence confinement credit ("PSCC") in connection with his 2007 conviction. However, it applied all but 13 days of that credit to his prior sentence for his 2003 conviction under section 18–1.3–405, C.R.S. (2013) ("Credit for presentence confinement"). As the district court noted:

> Thus, although the prior sentence(s) were ignored for purposes of calculating the PED, they were, arguably inconsistently, considered when determining the PSCC for purposes of calculating the PED. If the eight and twelve year sentences are considered as one continuous sentence, applying the PSCC in accordance with § 18–1.3–405, C.R.S. is no longer problematic.

present here would create an inequitable "windfall" for an inmate like Nowak, who was convicted of, and sentenced for, a subsequent crime after he was released following his first PED. DOC advances a policy argument that universal compliance with section 17–22.5–101 would confer a benefit upon inmates who stagger their crimes over time, as compared to inmates who commit their crimes at once. Likewise, DOC argues, universal compliance would reward inmates who commit new crimes while on parole for previous offenses, contrary to the public interest and contrary to the goals of statutes like section 18–1.3–801, C.R.S. (2013), which enhance and increase penalties for habitual criminal offenders. We reject these contentions.

¶ 38 As the district court correctly noted, this case only involves eligibility for parole. After the PED is calculated, the parole board has the ultimate discretion to grant or deny parole based on the totality of the circumstances, including but not limited to the factors set forth in section 17–22.5–404(4), C.R.S. (2013)—such as the actuarial risk of re-offense, the offender's institutional conduct, the adequacy of the offender's parole plan, aggravating or mitigating factors from the criminal case, and whether the offender has previously absconded or escaped, or attempted to do so, while on community supervision.

¶ 39 The grant of parole is a privilege, not a right. *Turman v. Buckallew*, 784 P.2d 774, 777 (Colo.1989). If the parole board shares DOC's concern that this construction of section 17–22.5–101 somehow creates a "windfall" for certain inmates or otherwise determines that parole is not appropriate—or if the circumstances are such that an inmate somehow becomes parole eligible before serving 50% of the continuous sentence [5]—it can exercise its discretion to deny parole. The parole eligibility date is just that—an eligibility date.

5. DOC has not established that these circumstances exist here. It states without support that application of the one-continuous-sentence rule would result in Nowak reaching his revised PED "after having served less than 50% of a composite 20-year sentence." But it also acknowledges that "[i]f Nowak had received a single 20-year

## V. Conclusion

¶ 40 We hold that, for the purpose of computing an inmate's PED, section 17–22.5–101 requires DOC to construe all sentences as one continuous sentence when the inmate has been committed under several convictions with separate sentences, even when doing so results in the inmate becoming parole eligible before serving at least 50% of the second sentence. We therefore affirm the district court's order instructing DOC to recalculate Nowak's PED based upon one continuous twenty-year sentence beginning May 13, 2003.

sentence in 2003, or both an 8–year sentence and a consecutive 12–year sentence in 2003, he would not have reached his PED until at least March or April of 2011." Nowak's habeas petition seeks the establishment of a revised PED during that exact time frame.