Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
July 1, 2019

**2019 CO 70**

**No. 17SA285,** *Diehl v. Weiser*—**Habeas Corpus**—**Parole Eligibility.**

The supreme court determines how the department of corrections ("DOC") should calculate an inmate's parole eligibility date when an inmate is released to serve mandatory parole and receives additional concurrent sentences. The supreme court concludes that the DOC's interpretation of the statutory scheme for inmate and parole time computations is reasonable. Accordingly, the supreme court holds that the new parole eligibility date for an inmate who was reincarcerated for a parole violation and is sentenced for additional offenses should be calculated using the beginning of the period of mandatory parole as the start of the inmate's one continuous sentence.

**The Supreme Court of the State of Colorado**

2 East 14th Avenue • Denver, Colorado 80203

**2019 CO 70**

**Supreme Court Case No. 17SA285**

*Appeal from the District Court*

Chaffee County District Court Case No. 16CV30043

Honorable Patrick W. Murphy, Judge

**Petitioner-Appellee:**

Scott Edward Diehl,

v.

**Respondents-Appellants:**

Philip J. Weiser, Colorado Attorney General; Jason Lengerich, Warden of Buena Vista Correctional Facility; and Dean Williams, Executive Director of the Colorado Department of Corrections.

**Judgment Reversed**

*en banc*

July 1, 2019

**Attorneys for Petitioner–Appellee**:

The Law Office of April M. Elliott, P.C.
April M. Elliott
    *Denver, Colorado*

Reppucci Law Firm, P.C.
Jonathan D. Reppucci
    *Denver, Colorado*

**Attorneys for Respondents–Appellants:**

Philip J. Weiser, Attorney General
Nicole Suzanne Gellar, First Assistant Attorney General
    *Denver, Colorado*

**JUSTICE HART** delivered the Opinion of the Court.

¶1     This habeas corpus appeal requires us to determine how the Department of Corrections ("DOC") should apply the "one-continuous-sentence" statute, section 17-22.5-101, C.R.S. (2018), to an offender who was eligible for and released to parole, committed additional crimes while on parole, and was sentenced for those subsequent crimes concurrent with his initial sentence. The central question is whether the offender's original prison sentences should be included in the newly calculated continuous sentence for purposes of determining a new parole eligibility date. We conclude today that they should not.

## I. Facts and Procedural History

¶2     Petitioner-Appellee, Scott Edward Diehl, pleaded guilty to three drug offenses in 2005. For each offense, he received a sentence that required him to serve a designated number of years in prison as well as a period of mandatory parole. He began serving his term of imprisonment for those sentences, which ran concurrently, on September 6, 2005.

¶3     Diehl was released from prison at the discretion of the state board of parole on August 16, 2011, and he immediately began serving a five-year period of mandatory parole. Diehl absconded from parole from February 14 to March 28, 2013. He was arrested and returned to prison to serve the remainder of his mandatory parole term incarcerated. During this period of reincarceration, Diehl pleaded guilty in three additional cases arising from the time when he was on parole. He received new sentences that were to run concurrently with his outstanding sentences.

¶4     On December 8, 2016, Diehl filed a petition for writ of habeas corpus with the district court, arguing that he was being unlawfully denied consideration for

discretionary parole. He contended that the DOC erred in using August 6, 2011, the date on which he was first released to mandatory parole, rather than September 6, 2005, the date on which he was first sentenced to prison, to calculate his parole eligibility date.

¶5    The district court agreed with Diehl. In doing so, the court rejected the DOC's argument that Diehl's "sentence to imprisonment" on his original convictions had been discharged when he began serving his mandatory period of parole and was thus no longer relevant to his new parole eligibility date. The district court concluded that a sentence, for purposes of Colorado's "one-continuous-sentence" rule, *see* § 17-22.5-101, is comprised of two components—a period of incarceration and a period of mandatory parole. Although the imprisonment component of the sentence was statutorily discharged when Diehl began serving his period of mandatory parole, *see* § 18-1.3-401(1)(a)(V)(D), C.R.S. (2018), the district court noted that the statutory scheme provides that Diehl's overall sentence was not "deemed to have [been] fully discharged" until Diehl "either completed or [had] been discharged by the state board of parole from the mandatory period of parole imposed pursuant to" section 18-1.3-401(1)(a)(V). Therefore, the district court concluded that the DOC was required to calculate Diehl's parole eligibility date using his first date of incarceration, September 6, 2005.

¶6     The DOC appealed the district court's order.[1]

## II.  Analysis

¶7     We begin by addressing our jurisdiction to resolve this appeal.  We then set out the appropriate standard of review, noting that we give considerable deference to the DOC's interpretation of the statutory scheme for inmate and parole time computations. Finally, we explain why the DOC's interpretation of the relevant statutes is reasonable and the new parole eligibility date for an inmate who was reincarcerated for a parole violation and is then sentenced for additional offenses should be calculated using the beginning of the period of mandatory parole as the start of the inmate's one continuous sentence.

## A.  Jurisdiction

¶8     This case comes to us on appeal from a habeas corpus proceeding.  Habeas corpus is available to review claims that a petitioner is being denied the opportunity to be considered for parole.  *Naranjo v. Johnson*, 770 P.2d 784, 787 (Colo. 1989).  Diehl filed a writ of habeas corpus challenging the DOC's calculation of his projected parole eligibility

---

[1] The issues on appeal are:

1.  Whether the Department is required to include statutorily discharged prison components as part of an offender's one continuous sentence for purposes of time computation?

2.  Whether the Department is required to calculate Diehl's sentence "consistent with" a time computation example stated in the Final Order?

date and arguing that he had effectively been denied at least six opportunities for discretionary parole consideration. The district court agreed that Diehl was eligible for parole consideration, and the DOC appealed. We have jurisdiction over appeals from habeas corpus proceedings. *Nowak v. Suthers*, 2014 CO 14, ¶ 11, 320 P.3d 340, 343; *see also* Colo. Const. art. VI, § 2 (providing that the supreme court shall have appellate jurisdiction and a "general superintending control over all inferior courts"); § 13-4-102(1)(e), C.R.S. (2018) (prohibiting the Colorado Court of Appeals from having initial jurisdiction over appeals from final judgments of writs of habeas corpus).

¶9 While awaiting the resolution of this appeal, Diehl was released on parole. The DOC asks us to remand this case to the district court to consider whether this case is now moot. We need not remand to make this determination. Mootness is a jurisdictional prerequisite that can be addressed at any stage during the proceedings. *See People v. Shank*, 2018 CO 51, ¶ 9, 420 P.3d 240, 243 ("[J]urisdictional prerequisite[s] . . . can be raised at any time during the proceedings."); *see also Nowak*, ¶ 12, 320 P.3d at 343 (electing to address mootness, despite not being raised by the parties, because it could affect the existence of a justiciable controversy).

¶10 A case is moot when a judgment would have no practical legal effect on the existing controversy. *Van Schaack Holdings, Ltd. v. Fulenwider*, 798 P.2d 424, 426 (Colo. 1990). When issues become moot because of subsequent events, as here where Diehl no longer has a claim that he is being unlawfully denied parole consideration, appellate courts will generally decline to render an opinion on the merits. *Id.* at 426–27. However, when the moot issue is one that is capable of repetition, yet evading review, we may

address the merits of the appeal. *Nowak*, ¶ 13, 320 P.3d at 343–44; *see also State Bd. of Chiropractic Exam'rs v. Stjernholm*, 935 P.2d 959, 971 (Colo. 1997).

¶11 This is one of those instances. During the DOC's 2018 budget hearing, then DOC Executive Director Rick Raemisch explained that there are "roughly 2,700 offenders that could potentially be affected by" our decision in *Executive Director of Colorado Department of Corrections v. Fetzer*, 2017 CO 77, 396 P.3d 1108, as well as our ruling in the present case. Colo. Dep't of Corr., Budget Hearing 11–12 (2018), http://leg.colorado.gov/sites/default/files/fy2018-19_corhrg.pdf [http://perma.cc/EX3A-RSUQ] ("[T]he [department] is . . . awaiting clarification on the court's opinion on the Deihl [sic] case which could impact these same recalculations."). Due to the vast number of potentially impacted offenders, this issue is capable of repetition. Additionally, because habeas petitions are generally subject to short statutory time periods, this issue may continue to evade review. *See Nowak*, ¶¶ 15–16, 320 P.3d at 344 (addressing habeas petition even though the inmate reached his parole eligibility date and was paroled at the time of appeal); *see also Colo. Dep't of Corr., Parole Div. v. Madison*, 85 P.3d 542, 544 n.2 (Colo. 2004) (noting that the relatively short statutory time periods associated with habeas proceedings make otherwise moot issues capable of repetition, yet likely to evade review). Therefore, we will address the arguments presented here.

## B. Standard of Review

¶12 Because the parties do not contest Diehl's underlying sentences or time credits, the sole issue we must address is the application of sections 17-22.5-101 and 18-1.3-401 to the calculation of Diehl's parole eligibility date. We review issues of statutory interpretation

6

de novo, giving deference to the DOC's interpretation of statutes pertaining to its responsibilities and authority when that interpretation is reasonable. *See Fetzer*, ¶ 17, 396 P.3d at 1113 ("[T]he department's interpretation of its responsibilities to administer relevant statutory mandates is entitled to great weight . . . .").

¶13 Our primary responsibility when interpreting statutes is to give effect to the General Assembly's intent. *Bostelman v. People*, 162 P.3d 686, 689 (Colo. 2007). We do so by first looking to the plain language of the statute, reading words and phrases in context, and construing them according to their common usage. *Id.* at 690. If the statutory language is clear and unambiguous, it is unnecessary to resort to rules of statutory construction, and our inquiry ends. "When statutory language conflicts with other provisions, we may rely on other factors such as legislative history, the consequences of a given construction and the goal of the statutory scheme to determine a statute's meaning." *Frazier v. People*, 90 P.3d 807, 811 (Colo. 2004).

## C. Parole Eligibility Calculations

¶14 As pertinent here, a defendant who receives a sentence for a class 2, 3, 4, 5, or 6 felony is eligible for parole when that person has served "fifty percent of the sentence imposed . . . less any time authorized for earned time granted pursuant to section 17-22.5-405." § 17-22.5-403(1), C.R.S. (2018). This seemingly clear command is often complicated when a defendant has multiple convictions and therefore multiple sentences. Indeed, this is the third time in just five years that we have confronted a question of how the DOC should calculate an inmate's parole eligibility date when he is subject to several sentences. *See Nowak*, ¶ 40, 320 P.3d at 348 (concluding that the DOC

7

must aggregate consecutive sentences when computing an inmate's parole eligibility date, even when doing so would result in the inmate becoming parole eligible before serving at least fifty percent of the second sentence); *see also Fetzer*, ¶¶ 16–17, 396 P.3d at 1112–13 (determining that calculating an inmate's parole eligibility date solely on the basis of an inmate's longest sentence, in place of a composite continuous sentence accounting for all the inmate's separate sentences, violates the one-continuous-sentence rule).

¶15 We start with section 17-22.5-101, which requires that "when any inmate has been committed under several convictions with separate sentences, the department shall construe all sentences as one continuous sentence." This "one-continuous-sentence" rule requires the DOC, among other things, to combine the inmate's sentences into one composite continuous sentence, and then determine when that continuous sentence begins to run. *See Fetzer*, ¶¶ 14, 16, 20, 396 P.3d at 1112–13; *Nowak*, ¶¶ 33–35, 40, 320 P.3d 347–48. We have explained that section 17-22.5-101 and section 17-22.5-403 must be read together and that they require the DOC to determine parole eligibility based on this one continuous sentence. *Nowak*, ¶ 35, 320 P.3d at 347.

¶16 The question here is how the DOC should calculate a new parole eligibility date when an offender who is on parole violates conditions of parole and is both reincarcerated to serve the remainder of his parole period and also convicted of additional offenses for conduct that occurred while he was paroled. Diehl and the DOC urge very different answers to that question.

¶17 Diehl argues that calculation of his new parole eligibility date must include both his period of mandatory parole and his sentence to imprisonment on the earliest offense for which he is still serving either component. He argues that our prior cases make clear that a "sentence" as that word is used in section 17-22.5-101 includes both a prison component and a period of mandatory parole. *See Fetzer*, ¶ 13, 396 P.3d at 1111 (identifying incarceration and parole as "component parts of a sentence"); *People v. Norton*, 63 P.3d 339, 344 (Colo. 2003) (explaining that there is "no persuasive reason to believe that mandatory parole was intended to be excluded from the scope of an offender's 'sentence'" as "sentence" is used in the presentence confinement provision of the sentencing statute); *People v. Luther*, 58 P.3d 1013, 1015 (Colo. 2002) ("The penalties for felony offenders under [the General Assembly's 1993 scheme] include both an incarceration component and a mandatory parole component."). Therefore, he argues, when he was reincarcerated to serve the remainder of his mandatory parole in prison, he was still serving a sentence that included both a prison component and a mandatory parole component and the entirety of that sentence should be included in the calculation of his parole eligibility date.

¶18 The district court accepted Diehl's argument and further relied on section 18-1.3-401(1)(a)(VI), which provides that an inmate "shall not be deemed to have *fully discharged his or her sentence* until said person has either completed or been discharged by the state board of parole from the mandatory period of parole imposed pursuant to [section 18-1.3-401(1)(a)(V)]." (Emphasis added.)

9

¶19     The DOC argues that section 18-1.3-401(1)(a)(V)(D) and our decision in *Luther*, 58 P.3d 1013, compel a different answer. Section 18-1.3-401(1)(a)(V)(D) provides that if the parole board grants an inmate early release from prison "the offender shall be deemed to have discharged the offender's sentence to imprisonment . . . in the same manner as if such sentence were discharged pursuant to law . . . ." The DOC interprets this provision to mean that, on release to mandatory parole, the imprisonment component of a sentence is extinguished and is therefore no longer part of any continuous sentence.

¶20     The DOC points out that its interpretation is supported by our decision in *Luther*, in which we stated that a prison sentence was "no longer operable in any sense" after an inmate was released to serve mandatory parole. 58 P.3d at 1016. In *Luther*, the inmate, like Diehl, was serving a mandatory period of parole when he committed the crime of escape. *Id.* at 1014. He was reincarcerated, and the district court imposed a sentence of three years imprisonment plus a three-year period of mandatory parole for his new conviction, to begin after the completion of the revoked parole incarceration period. *Id.* at 1015. Luther argued that this sentence violated the prohibition on imposing two periods of mandatory parole. *Id.* at 1014; *see* § 18-1.3-401(1)(a)(V)(E) ("If an offender is sentenced consecutively for the commission of two or more felony offenses . . . the mandatory period of parole for such offender shall be the mandatory period of parole established for the highest class felony of which such offender has been convicted."). As Luther saw it, he was already serving the mandatory parole portion of his original sentence and the court was now sentencing him to a new period of imprisonment with a second term of mandatory parole.

10

¶21 In rejecting Luther's argument, we considered whether "the General Assembly intended that the period of reincarceration be classified as 'mandatory parole'" and concluded that it did not, and instead that "reincarceration for violation of parole is not itself 'parole' . . . ." *Luther*, 58 P.3d at 1016–17. Because Luther could no longer be considered as serving a period of "mandatory parole" in connection with the original sentence, his consecutive sentences did not violate the prohibition against multiple mandatory parole periods. *Id.* Having reached that conclusion, we explained that "Luther's parole revocation reincarceration period and his new sentence for attempted escape are one continuous sentence, with one period of mandatory parole following." *Id.* at 1017.

¶22 Similarly, here, the DOC argues, when Diehl was reincarcerated for violating his parole, he was no longer serving a period of mandatory parole on the earlier sentences. Instead, his parole revocation reincarceration period is a separate and independent time period that must be incorporated with his newly imposed sentences into the "one continuous sentence" required by section 17-22.5-101.

¶23 The parties' disagreement reflects the reality that the relevant statutes are less than entirely clear. In some instances, the word "sentence" is used to mean both the combination of time in prison and time on mandatory parole. *See Edwards v. People*, 196 P.3d 1138, 1139 (Colo. 2008) (holding that "sentence" in the presentence confinement credit statute means both the incarceration portion and the parole portion of an offender's sentence); *Norton*, 63 P.3d at 343 (holding that the sentence, or penalty, imposed on felony offenders consists of "both an incarceration component and a parole component"). But

elsewhere the word "sentence" is used to mean only time in prison. *See Martin v. People*, 27 P.3d 846, 856 (Colo. 2001) (construing "maximum sentence imposed" in the parole board statute "as the sentence of incarceration ordered by the trial court"); *People v. Johnson*, 13 P.3d 309, 314 (Colo. 2000) (concluding that "sentence" in community corrections sentencing statute "refers to the period of confinement, imprisonment, or term of custody over which a court may exercise discretion when imposing a sentence, exclusive of any reference to mandatory parole"); *Craig v. People*, 986 P.2d 951, 963 (Colo. 1999) ("[M]andatory parole is imposed in addition to the imprisonment component of a sentence."). Similarly, section 18-1.3-401 refers to the "discharge" of the prison sentence on release to parole and also to the "full[] discharge" of the sentence only after parole has been served.

¶24 Given this lack of absolute statutory clarity, we will defer to the DOC's interpretation unless it is unreasonable. We have emphasized that "in light of the practicalities inherent in administering the complex of sentencing and parole mandates imposed by statute, the department's administrative interpretations are entitled to great weight." *Fetzer*, ¶ 20, 396 P.3d at 1113. Here, we conclude that the DOC's approach to calculating parole eligibility when an inmate is reincarcerated for a parole violation and sentenced on additional convictions for conduct that occurred while he was on parole is entirely reasonable. Indeed, in light of our decision in *Luther*, it is the better reading.

¶25 In *Luther*, we treated the parole revocation reincarceration period and the newly imposed sentence as two parts of one continuous sentence. The General Assembly amended the penalties statute the year after *Luther* was decided but did nothing to

12

disavow that decision's interpretation of the one-continuous-sentence rule. That is notable because, when a legislative body amends a statute, it is presumed that the legislature is aware of, and approves of, case law interpreting that statute. *See Semendinger v. Brittain*, 770 P.2d 1270, 1272 (Colo. 1989). Because the General Assembly did not amend the penalties statute in a way that would override our holding in *Luther*, we presume that the General Assembly approves of that holding. The DOC was therefore reasonable in adopting the approach it did to calculate Diehl's new parole eligibility date.

### III. Conclusion

¶26 The DOC's interpretation of sections 17-22.5-101 and 18-1.3-401 is reasonable. The new parole eligibility date for an inmate who was reincarcerated for a parole violation and is sentenced for additional offenses should be calculated using the beginning of the period of mandatory parole as the start of the inmate's one continuous sentence. Accordingly, we reverse the judgment of the district court.