1
 2025 CO 3 Nonhuman Rights Project, Inc., Petitioner-Appellant: v. Cheyenne Mountain Zoological Society and Bob Chastain. Respondents-Appellees: No. 24SA21
Supreme Court of Colorado, En Banc
January 21, 2025
 2
 
          
 Certiorari to the District Court El Paso County District
 Court Case No. 23CV31236 Honorable Eric Bentley, Judge
 
 
          
 Attorney for Petitioner-Appellant: Jacob Davis Washington,
 District of Columbia
 
 
          
 Attorneys for Respondents-Appellees: Brownstein Hyatt Farber
 Schreck, LLP John W. Suthers Rosa L. Baum Denver, Colorado
 
 
          
 Attorneys for Amici Curiae Association of Zoos &
 Aquariums, Denver Zoo, and Pueblo Zoo: Arnold & Porter
 Kaye Scholer LLP Robert Reeves Anderson Brian M. Williams
 Denver, Colorado
 
 3
 
          
 Attorneys for Amicus Curiae Former Justice Edwin Cameron:
 Schelhaas Law LLC Krista A. Schelhaas Littleton, Colorado
 
 
          
 Attorney for Amici Curiae Law Professors Randall S. Abate,
 Zsea Bowmani, Taimie L. Bryant, David N. Cassuto, Luis E.
 Chiesa, Daniel W. Dylan, David S. Favre, Angela Fernandez,
 Laura Fox, Pamela Frasch, Iselin M. Gambert, Sue
 Grebeldinger, Jodi Lazare, Matthew Liebman, Justin Marceau,
 Russ Mead, Rajesh K. Reddy, Jessica Rubin, Joan Schaffner,
 Sarah Schindler, Kristen A. Stilt, Mariann Sullivan, Katie
 Sykes, and Angie Vega: Chris Carraway Denver, Colorado
 
 
          
 Attorneys for Amicus Curiae Maneesha Deckha: Fisher Byrialsen
 PLLC Jane Fisher-Byrialsen Denver, Colorado
 
 
          
 Attorneys for Amici Curiae Philosophers Gary L. Comstock,
 Andrew Fenton, L. Syd M. Johnson, Robert C. Jones, Letitia M.
 Meynell, Nathan Nobis, David M. Peña-Guzmán,
 James Rocha, and Jeff Sebo: Killmer Lane, LLP David Lane
 Denver, Colorado
 
 
          
 Attorneys for Amici Curiae Shannon Minter and Evan Wolfson:
 Roberta Nieslanik Imelda Mulholland Grand Junction, Colorado
 Samler and Whitson, PC Hollis A. Whitson Denver, Colorado
 
 4
 
          
 Attorneys for Amici Curiae UK Animal Law Experts Joe Wills,
 John Adenitire, Frances Allen, Stacy Banwell, Edie Bowles,
 Rachel Dunn, Raffael Fasel, Marie Fox, Jeremy Frost, Bronwen
 Jones, Joshua Jowitt, Carley Lightfoot, Samuel March, Anthony
 Metzer, Tiffany Mitchell, Iyan Offor, Yoriko Otomo, Soraya
 Pascoe, Alan Robertshaw, Debbie Rook, Paula Sparks, Reuben
 Solomon, Katy Sowery, and Pearl Yong: The Law Office of Lucy
 Deakins Lucy H. Deakins Denver, Colorado
 
 
           Law
 Office of Suzan Trinh Almony Suzan Trinh Almony Broomfield,
 Colorado
 
 
          
 JUSTICE BERKENKOTTER delivered the Opinion of the Court, in
 which CHIEF JUSTICE MÁRQUEZ, JUSTICE BOATRIGHT,
 JUSTICE GABRIEL, JUSTICE HART, AND JUSTICE SAMOUR joined.
 JUSTICE HOOD did not participate.
 
 5
 
          
 OPINION
 
 
          
 BERKENKOTTER, JUSTICE
 
 
          ¶1
 This case comes to us on direct appeal of the dismissal of a
 habeas corpus proceeding. The appeal requires us to decide
 whether the liberty interests protected by the great writ of
 habeas corpus extend to nonhuman animals. Petitioner Nonhuman
 Rights Project, Inc. ("NRP") contends that the
 district court erred in dismissing its habeas petition
 because the five elephants that are the subject of the
 petition, Missy, Kimba, Lucky, LouLou, and Jambo ("the
 elephants"), lacked standing to seek relief via the
 great writ.
 
 
          ¶2
 For the reasons detailed below, we conclude that the district
 court correctly held that Colorado's habeas statute only
 applies to persons, and not to nonhuman animals, no matter
 how cognitively, psychologically, or socially sophisticated
 they may be. Accordingly, we affirm the judgment of the
 district court.
 
 
          I.
 Background and Procedural History
 
 
          ¶3
 Missy, Kimba, Lucky, LouLou, and Jambo are five elderly
 African elephants that live at the Cheyenne Mountain Zoo
 ("CMZ"). NRP, a nonprofit corporation that
 identifies its mission as seeking to secure legal rights for
 highly intelligent nonhuman animals, filed a Verified
 Petition for Writ of Habeas Corpus ("Petition") on
 behalf of the elephants to secure their transfer to a
 "suitable elephant sanctuary." In its Petition, NRP
 asserted that the elephants were unlawfully confined at the
 CMZ by respondents Cheyenne Mountain Zoological
 
 6
 
 Society and its President and CEO Bob Chastain (the
 "Zoo"). NRP argued that the elephants have a right
 to bodily liberty because they are autonomous and
 extraordinarily cognitively and socially complex beings.
 
 
          ¶4
 To support its request, NRP submitted affidavits from seven
 animal biologists. According to the affidavits, elephants are
 autonomous animals that generally have complex biological,
 psychological, and social needs. Their brains, which are the
 largest in absolute size of any land animal, hold nearly as
 many cortical neurons (used to control executive functioning)
 as humans' brains. Elephants, the affiants explain, share
 numerous cognitive capacities with humans, including
 self-awareness, empathy, awareness of death, intentional
 communication, and the ability to learn and categorize. They
 are, as well, highly social animals that have the capacity to
 form long-lasting memories. This ability allows elephants to
 gather and retain extensive social knowledge that accumulates
 with age.
 
 
          ¶5
 The affiants further observe that elephants are adept at
 communication, using as many as forty-seven different call
 types and more than three hundred gestures, signals, and
 postures to share knowledge and information with each other.
 In the wild, elephants travel tens of kilometers a day across
 diverse terrain in highly organized social groups. And,
 according to one of the affidavits submitted by NRP, when
 deprived of exercise, a varied environment, and the
 
 7
 
 social opportunities that the wild provides, elephants suffer
 from chronic frustration, boredom, and stress, resulting over
 time in physical disabilities, psychological disorders, and,
 often, brain damage.
 
 
          ¶6
 The Zoo filed a motion to dismiss the Petition for lack of
 subject matter jurisdiction and failure to state a claim on
 which relief may be granted. In its motion to dismiss, the
 Zoo vigorously disputed the factual allegations in the
 Petition, pushing back against the suggestion that the
 elephants were receiving anything short of remarkable care.
 It argued that there was no legal basis for habeas relief
 because the liberty interest guaranteed by the writ of habeas
 corpus does not extend to nonhuman animals and because the
 elephants at CMZ are not unlawfully confined. Further, the
 Zoo argued that the court lacked subject matter jurisdiction
 over the claim because the elephants do not have standing to
 seek habeas relief.
 
 
          ¶7
 The district court granted the Zoo's motion to dismiss.
 As required in ruling on a motion to dismiss, the court
 accepted the allegations in NRP's Petition as true,
 including its assertion that elephants cannot function
 normally in captivity. Addressing NRP's argument that the
 common law has historically been used to extend the writ of
 habeas corpus, the court noted that no U.S. court has
 extended the right to nonhuman animals and, regardless, that
 the right to habeas corpus in Colorado is a creature of
 statute.
 
 8
 
          ¶8
 Turning to that statute, the court concluded that section
 13-45-101, C.R.S. (2024), only authorizes habeas relief for
 "any person" and does not extend to nonhuman
 animals like the elephants. Thus, the court held that the
 elephants did not have standing to seek habeas relief and
 therefore the court did not have subject matter jurisdiction
 to hear the case. The court additionally determined that NRP
 did not have proper next friend status to bring a habeas
 petition on the elephants' behalf because it failed to
 establish that it was in a better position to speak for the
 elephants than the Zoo.
 
 
          ¶9
 Lastly, the court concluded that even if the elephants,
 through NRP, had standing to bring the habeas petition, NRP
 still had to make a prima facie showing that the elephants
 are unlawfully confined and entitled to immediate release. To
 make this showing, the court explained, a petitioner must
 produce "evidence that, when considered in a light most
 favorable to the petitioner and when all reasonable
 inferences therefrom are drawn in the petitioner's favor,
 would permit the court to find that the petitioner is
 entitled to release." Cardiel v. Brittian, 833
 P.2d 748, 752 (Colo. 1992).
 
 
          ¶10
 The court acknowledged that, accepting NRP's allegations
 as true, it had demonstrated the elephants would be better
 off in an accredited elephant sanctuary. But it further
 determined that NRP failed to prove that the elephants were
 being confined in violation of any cognizable legal standard.
 Indeed, the
 
 9
 
 court noted that "the Zoo holds the[] elephants under a
 broad framework of laws that permit zoos to hold nonhuman
 animals for public display in exactly the manner the Zoo is
 doing." NRP did not, the court noted, assert that the
 Zoo was violating any of those laws or standards. After
 explaining that a petition for writ of habeas corpus must be
 dismissed if it is insufficient on its face, §
 13-45-101, the court granted the Zoo's motion to dismiss,
 concluding that the elephants lack standing to bring a habeas
 petition, but that even if they had standing, they are not
 unlawfully confined.
 
 
          ¶11
 NRP directly appealed the district court's
 order.[1] For the reasons discussed below, we
 affirm.
 
 
          IL
 Analysis
 
 
          ¶12
 This case requires us to determine whether the liberty
 interests protected by the writ of habeas corpus extend to
 nonhuman animals. We begin by addressing our jurisdiction to
 resolve this appeal. Then, we set out the appropriate
 standard of review. Next, we address the historical
 development of the writ of habeas corpus in the common law as
 well as in Colorado's writ of habeas corpus statute. We
 then discuss subject matter jurisdiction and the requirements
 for standing.
 
 10
 
 Finally, applying the relevant statutes and case law, we
 affirm the district court's holding that the elephants do
 not have standing because, as we explain, habeas corpus
 relief in Colorado is available only to persons, not nonhuman
 animals.
 
 
          A.
 Jurisdiction
 
 
          ¶13
 This case comes to us on direct appeal of the dismissal of a
 habeas corpus proceeding. Colorado's habeas corpus
 statute allows for the filing of a habeas petition by any
 person who is being unlawfully detained by anyone, whether a
 state actor or not. § 13-45-102, C.R.S. (2024). We have
 direct appellate jurisdiction over habeas corpus proceedings
 pursuant to article VI, section 2(1) of the Colorado
 Constitution (giving the supreme court appellate jurisdiction
 and a "general superintending control over all inferior
 courts") and section 13-4-102(1)(e), C.R.S. (2024)
 (prohibiting the Colorado Court of Appeals from having
 initial jurisdiction over appeals from final judgments of
 writs of habeas corpus). See also Diehl v. Weiser,
 2019 CO 70, ¶ 8,444 P.3d 313,316 ("We have
 jurisdiction over appeals from habeas corpus
 proceedings.").
 
 
          B.
 Standard of Review
 
 
          ¶14
 A C.R.C.P. 12(b)(1) motion to dismiss challenges a
 court's subject matter jurisdiction. When, as here, the
 resolution of the jurisdictional challenge involves no
 disputed facts and instead presents a question of law, we
 review the district court's ruling on a motion to dismiss
 de novo. Jones v. Williams, 2019 CO 61, ¶ 7,
 443 P.3d 56, 59.
 
 11
 
 Likewise, we review de novo issues of statutory
 interpretation. Godinez v. Williams, 2024 CO 14,
 ¶ 19, 544 P.3d 1233, 1237. In interpreting a statutory
 requirement, we must give effect to the General
 Assembly's intent by first turning to the text and giving
 words their plain and ordinary meanings. Jones,
 ¶ 7, 443 P.3d at 59 (citing Colorow Health Care, LLC
 v. Fischer, 2018 CO 52M, ¶ 11, 420 P.3d 259, 262).
 If the language is clear and unambiguous, then our analysis
 ends there. Diehl, ¶ 13, 444 P.3d at 317.
 
 
          C.
 The Great Writ
 
 
          ¶15
 Embodying the decree in the Magna Carta that no man would be
 imprisoned contrary to the law of the land, the writ of
 habeas corpus developed, albeit painstakingly, over hundreds
 of years of English constitutional history. Boumediene v.
 Bush, 553 U.S. 723, 740 (2008). "The writ was known
 and used in some form at least as early as the reign of
 Edward I" in the thirteenth century. Id.
 "Over the centuries it has been the common law
 world's 'freedom writ' by whose orderly processes
 the production of a prisoner in court may be required and the
 legality of the grounds for his incarceration inquired into,
 failing which the prisoner is set free." Smith v.
 Bennett, 365 U.S. 708, 712-13 (1961).
 
 
          ¶16
 The writ "became 'an integral part of our common-law
 heritage' by the time the Colonies achieved independence
 and received explicit recognition in the Constitution."
 Rasul v. Bush, 542 U.S. 466, 473-74 (2004) (citation
 omitted)
 
 12
 
 (quoting Preiser v. Rodriguez, 411 U.S. 475, 485
 (1973)). "The Framers viewed freedom from unlawful
 restraint as a fundamental precept of liberty, and they
 understood the writ of habeas corpus as a vital instrument to
 secure that freedom." Boumediene, 553 U.S. at
 739.
 
 
          ¶17
 The writ of habeas corpus was first referred to as the
 "great writ" by Chief Justice Marshall in Ex
 parte Bollman, 8 U.S. (4 Cranch) 75, 96 (1807), because
 of its role in preserving freedom against illegal restraint.
 The right to habeas corpus has been described as "the
 greatest of all writs" and the "precious safeguard
 of personal liberty." Geer v. Alaniz, 331 P.2d
 260,261 (Colo. 1958) (first quoting People ex rel.
 Sabatino v. Jennings, 158 N.E. 613, 614 (N.Y. 1927); and
 then quoting Bowen v. Johnston, 306 U.S. 19, 26
 (1939)). The writ's "history is inextricably
 intertwined with the growth of fundamental rights of personal
 liberty." Pay v. Noia, 371 U.S. 391, 401
 (1963), overruled in part on other grounds by Wainwright
 v. Sykes, 433 U.S. 72 (1977). It is "not now and
 never has been a static, narrow, formalistic remedy; its
 scope has grown to achieve its grand purpose -the protection
 of individuals against erosion of their right to be free from
 wrongful restraints upon their liberty." Peyton v.
 Rowe, 391 U.S. 54, 66 (1968). The writ's
 "function has been to provide a prompt and efficacious
 remedy for whatever society deems to be intolerable
 restraints." Pay, 372 U.S. at 401-02. To that
 end, the writ has profound historical importance as a means
 to challenge various forms of unjust detention.
 
 13
 
          ¶18
 In Colorado, a court's authority "to hear habeas
 corpus petitions derives from constitutional and statutory
 grants of authority." Jones, ¶ 9, 443 P.3d
 at 59. While the Colorado Constitution "grants the right
 to seek a writ of habeas corpus," the statute
 "makes it 'lawful ... to apply to the . . . district
 courts for a writ of habeas corpus.'" Id.
 (omissions in original) (first citing Colo. Const, art. II,
 § 21; and then quoting § 13-45-101(1)). Thus, both
 the "Habeas Corpus [Statute] and the rules of this court
 delineate the right which may be enforced with the Great Writ
 of Habeas Corpus, and the procedure which is to be
 followed." Ryan v. Cronin, 553 P.2d 754, 755
 (Colo. 1976). This court has expressly stated that the habeas
 corpus statute "carefully defines the circumstances
 under which the relief authorized thereby may be granted. The
 intervention by the judiciary ... is reserved for [the] most
 serious violations of fundamental rights . ..."
 White v. Rickets, 684 P.2d 239, 241 (Colo. 1984).
 
 
          ¶19
 While habeas corpus petitions are typically filed to seek the
 liberty of persons held in criminal custody by the state,
 Colorado's habeas corpus statutes also allow for the
 filing of a habeas petition by any person who is being
 unlawfully detained by anyone, whether a state actor or
 not.[2]
 With this background in mind,
 
 14
 
 we turn to the requirements for a party to have standing and
 to the issue of subject matter jurisdiction.
 
 
          D.
 Standing and Subject Matter Jurisdiction
 
 
          ¶20
 "Standing represents a challenge to the court's
 subject matter jurisdiction." Lobato v. State,
 218 P.3d 358, 368 (Colo. 2009). As a preliminary matter, a
 plaintiff must have standing to sue in order to bring a legal
 action. Ainscough v. Owens, 90 P.3d 851, 855 (Colo.
 2004). Thus, standing is a threshold issue that "must be
 determined prior to a decision on the merits."
 Hickenlooper v. Freedom from Religion Found., Inc.,
 2014 CO 77, ¶ 7, 338 P.3d 1002,1006 (citing
 Ainscough, 90 P.3d at 855). ¶21 To have
 standing under Colorado law, "(1) the party must have
 suffered injury-in-fact; and (2) this injury must be to a
 legally protected interest." Aurora Pub. Schs. v.
 A.S., 2023 CO 39, ¶ 26, 531 P.3d 1036, 1044. If the
 court determines that a plaintiff does not have standing, it
 must dismiss the case. Wimberly v. Ettenberg, 570
 P.2d 535, 539 (Colo. 1977). We review de novo whether a
 plaintiff has standing to sue. Ainscough, 90 P.3d at
 856.
 
 
          III.
 Application
 
 
          ¶22
 NRP contends that the district court erred in dismissing its
 Petition because nonhuman animals are entitled to habeas
 protection. We disagree.
 
 15
 
          ¶23
 As noted, in Colorado, the right to habeas corpus is defined
 by statute. Thus, the question before us is "whether
 [the legislature] has passed a statute actually [granting
 standing to nonhuman animals]." Cetacean Cmty. v.
 Bush, 386 F.3d 1169, 1176 (9th Cir. 2004). The statute
 at issue here authorizes habeas petitions by persons
 detained in circumstances other than criminal matters. It
 states, in relevant part:
 
 
 When any person not being committed or detained for
 any criminal or supposed criminal matter is confined or
 restrained of his liberty under any color or pretense
 whatever, he may proceed by appropriate action as prescribed
 by the Colorado rules of civil procedure in the nature of
 habeas corpus which petition shall be in writing, signed by
 the party or some person on his behalf, setting forth the
 facts concerning his imprisonment and wherein the illegality
 of such imprisonment consists, and in whose custody he is
 detained. The petition shall be verified by the oath or
 affirmation of the party applying or some other person on his
 behalf.
 
 
 § 13-45-102 (emphasis added).
 
 
          ¶24
 Colorado's habeas corpus statute does not define the term
 "person." It is, however, defined by section
 2-4-401, C.R.S. (2024), which contains definitions that
 "apply to every statute, unless the context otherwise
 requires." Under section 2-4-401(8),
 "'Person' means any individual, corporation,
 government or governmental subdivision or agency, business
 trust, estate, trust, limited liability company, partnership,
 association, or other legal entity." Looking to the
 dictionary, the term "person" is defined as an
 individual human being. See Person, Black's Law
 Dictionary (12th ed. 2024) ("[a] human being");
 Person, Merriam-
 
 16
 
 Webster Dictionary, https://
 www.merriam-webster.com/dictionary/person
 [https://perma.cc/6AX5-9MCH] ("human, individual").
 
 
          ¶25
 Given the statutory definition of the term "person"
 and the plain and ordinary meaning of the term found in the
 dictionary, we conclude that the General Assembly's
 choice of the word "person" demonstrates its intent
 to limit the reach of section 13-45-102 to human beings. Our
 conclusion is further bolstered by the fact that including
 nonhuman animals in the definition of the term
 "person" is the type of monumental change in the
 law that one would reasonably expect the General Assembly to
 make explicit. That is, "[i]f [the General Assembly]
 intended to take the extraordinary step of authorizing
 animals as well as people ... to sue, they could, and should,
 have said so plainly." Cetacean Cmty., 386 F.3d
 at 1179 (first alteration in original) (quoting Citizens
 to End Animal Suffering &Exploitation, Inc. v. New
 England Aquarium, 836 F.Supp. 45,49 (D. Mass. 1993)). By
 stating that the statute applies to "any
 person," the legislature made clear to whom the
 statute applies. It does not include nonhuman animals.
 
 
          ¶26
 NRP urges us to look to the common law, not to section
 13-45-102, to determine the substantive scope of the
 elephants' habeas corpus rights. According to NRP, the
 common law writ of habeas corpus provides relief far broader
 than that provided by Colorado's habeas corpus statute.
 Again, we disagree. Regardless of how broadly the writ was
 used in colonial times or well before then,
 
 17
 
 we need not look to the common law here because
 Colorado's habeas corpus statute explicitly limits the
 right to habeas corpus relief in Colorado to "per son
 [s]." See Jones, ¶ 9, 443 P.3d at 59;
 Ryan, 553 P.2d at 755; White, 684 P.2d at
 241.
 
 
          ¶27
 Indeed, even if the right to habeas corpus relief in Colorado
 was defined solely by the common law, we would still not be
 persuaded. This is because nothing in the common law supports
 NRP's position, which rests primarily on a concurring
 opinion and two dissenting opinions in its unsuccessful
 efforts to extend the writ of habeas corpus to nonhuman
 animals See Nonhuman Rts Project, Inc v Lavery, 100
 N.E.3d 846,846-49 (NY 2018) (Fahey, J, concurring);
 Nonhuman Rts. Project, Inc.v. Breheny, 197N.E.3d
 921, 932-66 (N.Y. 2022) (Wilson, J., dissenting);
 Breheny, 197 N.E.3d at 966-77 (Rivera, J.,
 dissenting). We are not alone in rejecting NRP's attempt
 to extend the great writ to nonhuman animals. NRP has
 commenced similar legal proceedings in many other states on
 behalf of elephants and chimpanzees living in zoos and other
 facilities. Every one of its petitions for writ of habeas
 corpus has been denied for the same or very similar reasons.
 
 
          ¶28
 For example, in Breheny, NRP sought habeas corpus
 relief on behalf of Happy, an elephant residing at the Bronx
 Zoo. 197 N.E.3d at 923. There, the court dismissed the
 petition after it held that the right to habeas corpus does
 not extend
 
 18
 
 to nonhuman animals as it protects "the right to liberty
 of humans because they are humans with certain
 fundamental liberty rights recognized by law."
 Id. at 927.
 
 
          ¶29
 In Nonhuman Rights Project, Inc. v. R.LV.
 Commerford & Sons, Inc., 216 A.3d 839, 840, 844
 (Conn. App. Ct. 2019), the court dismissed NRP's petition
 for a writ of habeas corpus on behalf of three elephants,
 Beulah, Minnie, and Karen, at the Commerford Zoo. The court
 examined its habeas corpus jurisprudence and stated that
 there is "no indication that habeas corpus relief was
 ever intended to apply to a nonhuman animal, irrespective of
 the animal's purported autonomous characteristics."
 Id. at 844. Further, the court held that elephants
 are "incapable of bearing duties and social
 responsibilities" required by the social compact that
 forms the Connecticut Constitution and therefore the three
 elephants did not have standing. Id. at 845; see
 also Lavery, 100 N.E.3d at 846 (denying a motion for
 leave to appeal the dismissal of habeas corpus proceedings
 brought on behalf of Tommy and Kiko, two chimpanzees).
 
 
          ¶30
 Simply put, no Colorado court, nor any other court in any
 other jurisdiction in the United States has ever recognized
 the legal "personhood" of any nonhuman
 species.[3]
 
 19
 
          ¶31
 Courts have rejected these types of claims, among other
 reasons, due to concerns regarding the unintended
 consequences of recognizing nonhuman animals as persons. As
 the Breheny majority recognized, "[granting
 legal personhood to a nonhuman animal. .. would have
 significant implications for the interactions of humans and
 animals in all facets of life, including risking the
 disruption of property rights, the agricultural industry [,]
 ... and medical research efforts." 197 N.E.3d at 929;
 see, e.g., Lewis v. Burger King, 344 Fed.Appx. 470,
 472 (10th Cir. 2009) (holding "Lady Brown Dog, as a dog
 and putative co-plaintiff, lacks standing to sue under the
 ADA (or any other civil rights statute)."). We recognize
 these concerns, but far more importantly, we are persuaded
 that if the General Assembly intended to recognize nonhuman
 animals as persons entitled to habeas relief, it would have
 explicitly said so.
 
 
          ¶32
 We are also unpersuaded by NRP's assertion that habeas
 corpus relief is based on a being's autonomous capacity.
 Habeas protections flow from the status of being a person,
 not from a being's ability to pass some type of
 autonomous capacity test. As the Breheny majority
 observed:
 
 
 The selective capacity for autonomy, intelligence, and
 emotion of a particular nonhuman animal species is not a
 determinative factor in whether the writ is available as such
 factors are not what makes a person detained qualified to
 seek the writ. Rather, the great writ
 
 20
 
 protects the right to liberty of humans because they are
 humans with certain fundamental liberty rights
 recognized by law....
 
 
 197 N.E.3d at 927 (emphasis added).
 
 
          ¶33
 Finally, we observe that NRP is not actually seeking the
 right to liberty -that is, freedom from captivity - for the
 elephants. It conceded as much during oral argument,
 acknowledging that it was not suggesting that the Zoo should
 open its gates and set the elephants loose to roam free in
 Colorado Springs and beyond, any more than it was suggesting
 that very smart dogs could not be "kept" as house
 pets. Instead, it asked to transfer the elephants from the
 Zoo to a different confinement. The fact that NRP merely
 seeks the transfer of the elephants from one form of
 confinement to another is yet another reason that habeas
 relief is not appropriate here. See White, 684 P.2d
 at 242.
 
 
          ¶34
 It bears noting that the narrow legal question before this
 court does not turn on our regard for these majestic animals
 generally or these five elephants specifically. Instead, the
 legal question here boils down to whether an elephant is a
 person as that term is used in the habeas corpus statute. And
 because an elephant is not a person, the elephants here do
 not have standing to bring a habeas corpus claim.
 
 
          ¶35
 This is why the district court correctly concluded that it
 lacked subject matter jurisdiction and had no choice but to
 dismiss NRP's Petition. Since the elephants do not have
 standing, we need not reach the question of whether the
 
 21
 
 Petition sets forth a prima facie case for their immediate
 release from the Zoo. Last, we emphasize, like every other
 court that has considered a similar appeal by NRP, that its
 efforts to expand existing legal rights for nonhuman animals
 - including for Missy, Kimba, Lucky, LouLou, and Jambo -are
 best advanced through the legislative, not judicial, branch.
 
 
          IV.
 Conclusion
 
 
          ¶36
 The district court properly concluded that Colorado's
 writ of habeas corpus does not apply to nonhuman animals. We
 therefore affirm.
 
 
 ---------
 
 
 Notes:
 
 
 [1] The issues on appeal are as
 follows:
 
 
 1. Does the Petition make a prima facie case that
 Missy, Kimba, Lucky, LouLou, and Jambo are entitled to
 release?
 
 
 2. Did the district court have subject matter
 jurisdiction?
 
 
 [2] There are two habeas corpus statutes
 in Colorado. Section 13-45-101 grants a person the right to
 apply for a writ of habeas corpus in criminal matters. It
 also describes the procedures required when a writ is filed.
 In contrast, section 13-45-102 provides for habeas relief in
 civil cases but states that the "same
 proceedings shall thereupon be had in all respects as are
 directed in section 13-45-101." For clarity and ease of
 reading, we refer to both throughout this opinion as
 Colorado's habeas corpus statute.
 
 
 [3] The one possible exception was walked
 back in 2004 by the Ninth Circuit, which described its
 suggestion in a 1988 opinion that an endangered Hawaiian bird
 had "legal status," Palila v. Haw. Dep't of
 Land & Nat. Res., 852 F.2d 1106,1107 (9th Cir.
 1988), as non-binding dicta that was "little more than
 rhetorical flourish[]." Cetacean Cmty., 386
 F.3d at 1174.
 
 
 ---------